**Darwin J. ROBERTS, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services,[1] Defendant.**

**No. C 82–4118.**

United States District Court,
N.D. Iowa, W.D.

Dec. 29, 1986.

---

1. Otis R. Bowen succeeded Margaret M. Heckler as the Secretary of Health and Human Service on December 13, 1985. Pursuant to Fed.R. Civ.P. 25(d)(1), Otis R. Bowen shall be substituted for Margaret M. Heckler as the defendant in this suit.

Dennis J. Mahr, Sioux City, Iowa, for plaintiff.

Asher E. Schroeder, Asst. U.S. Atty., Sioux City, Iowa, for defendant.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on a request by the plaintiff for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412 (West Supp. 1986) and a request by plaintiff's counsel for attorney's fees under the Social Security Act ("SSA"), 42 U.S.C. § 406(b) (1982). On May 12, 1986, this Court reversed the Secretary's finding that the plaintiff was not disabled and ordered him to award disability benefits to the plaintiff. For reasons stated below, the Court finds that the plaintiff is not entitled to an award under the EAJA because the Secretary's position was substantially justified, but will permit plaintiff's counsel to levy a fee of $15,-695.70 under the SSA.

Two federal statutes govern attorney fee awards in Social Security cases but fulfill somewhat different needs. Section 406(b) of the Social Security Act, which permits the agency and federal courts to certify reasonable fee arrangements between claimant and counsel, was enacted by Congress in 1965 to encourage effective legal representation of claimants while ensuring that old-age benefits for retirees and disability benefits for the disabled would not be diluted by inordinately large contingency fees. S.Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. &

Admin.News 1943, 2062. The Equal Access to Justice Act was enacted for a narrower purpose—"to encourage relatively impecunious private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of incurring large litigation expenses." *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1315–16 (8th Cir.1986). Thus, in the absence of abusive or unreasonable government behavior, Social Security claimants will normally bear the reasonable costs of litigating their claims; however, unreasonable attorney's fees may not be assessed to either the client or the government.

In this case, the plaintiff and his counsel seek awards under each act. Because EAJA awards are levied against the government and awarded to the claimant, and awards under the SSA are withheld from the claimant's award, there is no chance of double taxation or double recovery. Thus, in theory the Court may grant each request. But "because an EAJA award does not reduce the amount of benefits received by the claimant and is thus obviously preferable to the claimant," this Court should first consider the claimant's request for attorney's fees under the EAJA. *Climer v. Bowen*, 649 F.Supp. 181 (N.D.Iowa 1986) (Lay, C.J., sitting by designation).

## I. The EAJA Request

In relevant part, the EAJA provides: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Because this case was pending when the Act was amended in 1985, it is governed by the 1985 amendments. Pub.L. No. 99–80, § 7(a), 99 Stat. at 186. The government carries the burden of proving that its pre-litigation action and its posture in court were substantially justified. Pub.L. No. 99–80 at § 1(c)(3), 99 Stat. at 184. The scope of relevant evidence on this question is limited to "the record (including the record with respect to the action by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." Pub.L. No. 99–80 at 2(b) (codified at 28 U.S.C.A. § 2412(d)(1)(B) (West Supp.1986)).

### A. Was the Government's Position Substantially Justified?

■ The meaning of "substantially justified" under the EAJA has never been very clear. The 1985 amendments were intended to clarify the Act. H.Rep. No. 120, 99th Cong., 1st Sess. 21 (1985), reprinted at 1985 U.S.Code Cong. & Admin.News 132, 149. Nevertheless, the amendments, the House report, and floor debate have caused the meaning of "substantially justified" to become even muddier.[2]

---

**2.** The plaintiff understandably relies upon a section of the House Report which indicates that courts should read the amendment's silence on the meaning of substantially justified as a ratification of court decisions which held the government to a standard higher than mere reasonableness, and a repudiation of statements by other courts that an administrative decision may be substantially justified even if it must be reversed because it was not supported by substantial evidence. The report continued that "agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act." H.Rep. at 9–10, re-

printed at 1985 U.S.Code Cong. & Admin.News 138.

However, major cosponsors of the amendments expressly repudiated this language during floor debates. Describing the above-quoted passage as a "gratuitously authoritarian overstatement," Rep. Kindness stated:

Substantial justification is a different and lesser standard than the substantial evidence standard applied in a review of administrative proceedings. The government may still prove that its position was substantially justified even if the court does not believe that the case on the merits was supported by substantial evidence on the record as a whole.

The Eighth Circuit Court of Appeals recently attempted to reconcile the competing indices of congressional intent, and concluded that "the government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." *1,378.65 Acres* at 1318.

In examining the full record in this case, the Court finds that the government's position throughout this action was well founded in fact and law, though incorrect. In its Order of May 12, 1986, the Court described four errors committed by the Appeals Council in reversing the ALJ's finding of disability.

1. In rejecting the ALJ's credibility determination concerning the plaintiff's allegations of pain and other nonexertional limitations, the Appeals Council failed to make explicit findings which led to its finding of noncredibility. Slip op. at 3.

2. The Appeals Council found that the record failed to show that the claimant had experienced significant anginal pain since his bypass surgery despite testimony in the record by the claimant's doctor describing symptoms typical of angina. The Appeals Council also found that his chest pains lasted only a few seconds despite testimony by the plaintiff to the contrary. Slip op. 4–5.

3. The Council failed to fully and fairly develop the administrative record by failing to order an angiogram recommended by defendant's counsel and discounted the plaintiff's plausible complaints of hourly urinary frequency when consultative exams should have been ordered. Slip op. at 5.

4. The Council relied upon the Medical-Vocational Guidelines ("the grid") after improperly failing to view the plaintiff's dyslexia and reactive depression as significant nonexertional impairments requiring reliance upon the testimony of a vocational expert rather than the grid. Slip op at 6.

The Court stated that the Council had committed other errors, but did not describe those errors. These errors were not significant enough to describe in the Order, and the Court finds that they could not have been significant enough to prevent the decision from being substantially justified.

In reviewing the first error, the Court finds that the Secretary could justifiably have believed that its reversal of the ALJ's credibility determination was legally proper. This was not a case in which the ALJ's credibility finding was based primarily upon demeanor or other factors which the Appeals Council could not adequately glean from the record. Instead, the ALJ found the claimant's complaints of pain and other nonexertional impairments were credible on the basis of medical evidence in the record (Tr. at 261). Thus, the Appeals Council was as capable of evaluating this medical evidence as the ALJ. While this Court found that they failed to make explicit findings concerning credibility, it was sufficiently reasonable for the Secretary to believe that the Appeals Council's lengthy critique of medical evidence supposedly showing nonexertional impairments fulfilled the explicit findings requirement.

The second error demonstrates that the Appeals Council's conclusion that the claimant had not experienced significant anginal pain since bypass surgery was based on an inaccurate understanding of angina symptomology, as well as a misunderstanding of how long the claimant's pain lasted. However, this error is not sufficiently unreason-

---

131 Cong.Rec. H4763 (daily ed. June 24, 1985), *quoted in United States v. 1,378.65 Acres* at 1318 n. 3, and *Climer*, 649 F.Supp. at 182. *See also* 131 Cong.Rec. at H4763 (statement of Rep. Kastenmeier that a lack of substantial evidence does not automatically entitle the prevailing party to fees or create a presumption of entitlement).

While this Court does not agree with then-Judge Scalia's assertion that this House Report should be given no more respect than "an equivalently unreasoned law review article," *Hirschey v. F.E.R.C.*, 777 F.2d 1, 8 (D.C.Cir.1985) (Scalia, J., concurring); the floor debate shows that the report's language cannot be taken at face value.

able. It is not clear that the claimant's pain on June 6, 1981 was angina; the examiner's report only described it as "substernal chest pain which reached into the neck and back" but did not diagnose it as angina. (Exhibit 27). The Appeals Council correctly noted claimant's testimony that his pain would "only last for a few seconds," (Tr. 301) although the Council should have realized that the claimant later testified that his pain sometimes lasts longer than a few seconds (Tr. 303).

The third error was not significant enough to keep the Secretary's position from being substantially justified. While the Appeals Council noted that the plaintiff's hearing behavior was inconsistent with his complaints of hourly urinary frequency, it also noted that the problem was one of long-standing nature, going back to a period when the claimant was able to work. The Secretary has much discretion to order or refuse to order consultative exams. While this Court believes the Appeals Council should have done so in this case, their failure to do so does not prevent the Secretary's position from being substantially justified.

The fourth error resulted from the Council's failure to consider the claimant's nonexertional impairments as significant enough to make the grid inapplicable. This decision, however, was based upon their conclusion that the psychiatrist's report was based upon an inaccurate perception of the severity of the claimant's cardiac status. (Tr. 251). While this Court believed the Appeals Council should have relied more heavily upon the ultimate conclusions drawn by the psychiatrist and a psychologist, the Council's explanation for discounting the psychiatrist's report provides a suf-

ficient basis in fact for their decision. Moreover, the nature of the sequential review process makes it quite justifiable for the Appeals Council to accept a psychologist's medical diagnosis while refusing to accept his conclusions concerning employability.

Because the government's position was well founded in law and in fact, the Court must deny the plaintiff an award under the Equal Access to Justice Act.

## II. The SSA Fee Request

Under § 406(b) of the Social Security Act, "the court may determine and allow ... a *reasonable fee* ... not in excess of 25% of the total of the past due benefits...." (Emphasis supplied). "The fee to be determined and allowed by the court is a reasonable fee, and the 25% mentioned in the statute merely fixes a maximum allowable; it does not guide the court as to what is reasonable." *Bix v. Heckler*, No. 83-288-B, slip op. at 2 (S.D.Iowa 1984). Courts in the Northern and Southern Districts of Iowa have multiplied the amount of time reasonably spent by a rate of $125.00 per hour, and have awarded this amount or 25% of past-due benefits, whichever is smaller. *Id.* at 3; *Finch v. Heckler*, No. 82-364 (N.D.Iowa May 22, 1985).

Plaintiff's counsel has submitted and supplemented time schedules documenting his efforts on behalf of his client. The initial petition for 25% of past-due benefits under the SSA describes 260.7 hours of work performed at the administrative and judicial levels; a supplemental petition describes an additional[3] 19.6 hours of work at the judicial level. The Secretary argues that many of these requests are unreasonable and should be stricken.[4]

---

3. The Court will disregard 24.9 hours described in the supplemental request which were also described in the initial request.

4. The Secretary did not separately challenge the SSA request, although his criticism of the type and volume of work performed is relevant to both Acts because each Act requires that fees awarded be reasonable. See *Bix v. Heckler*, 83-288-B (S.D.Iowa Dec. 13, 1984). Furthermore, the Court has a special responsibility to

scrutinize the reasonableness of a counsel's request for a share of the claimant's past-due benefits under the SSA because a claimant's representative has a pecuniary interest in maximizing his SSA award which conflicts with his client's pecuniary interests. See *Dowdy v. Bowen*, 636 F.Supp. 591, 594 (W.D.Mo.1986); *Taylor v. Heckler*, 608 F.Supp. 1255, 1257 (D.N.J.1985).

Neither the Secretary nor the Court question the veracity of the counsel's bills; it is obvious from briefs of 57, 28, 20, 18, 16, and 9 pages filed by the plaintiff's counsel that he worked very hard in this case. But in deciding how much of the cost of this work may be legally and fairly shifted to the claimant, the Court must make an independent evaluation of the reasonableness of counsel's bill. Plaintiff's counsel should remember that federal courts have slashed the bills of even the most effective and respected lawyers. *See, e.g., Grendel's Den v. Larkin,* 749 F.2d 945 (1st Cir.1984) (Professor Laurence Tribe's § 1988 bill reduced from $176,137.50 to $81,987.50).

This case was unusually complex because the claimant suffers from thirteen ailments and the Appeals Council's decision contained several legal errors. Furthermore, this case was appealed, remanded, reopened, reviewed and finally reversed, and thus demanded a significant commitment of effort from counsel. Because this is an atypical case, the Court cannot compare the total amount requested here with more typical requests. However, this complexity does not justify many of the requests.

█ Attached to counsel's supplemental brief and second supplemental brief are pages from a chart plaintiff's counsel spent 45.4 hours preparing. He states that this chart was "intended to demonstrate to the court that there was virtually no chance the Secretary could win on Mr. Roberts' fact pattern before the Eighth Circuit, and, on the other hand, there was virtually no chance this Court could be reversed if this Court sided with Mr. Roberts on the merits herein." (Plaintiff's Reply to Defendant's Response to Plaintiff's Application for Attorney's Fees at 13–14).

While this Court is concerned with the likelihood of reversal, it can never decide a case in any particular way because that result is statistically safer. This Court prefers to be persuaded the old-fashioned way—by careful but concise application of governing law to the facts of the case before it. In this case, traditional argumentation adequately demonstrated that the plaintiff should prevail, and the chart was not needed to reinforce or supplement such argumentation. Thus, the 45.4 hours spent preparing the chart will be disallowed.

█ Furthermore, the plaintiff's briefs, taken as a whole, could have been much more brief. Local Rule 2.2.9 states in part:

A brief shall be as concise as the issues briefed reasonably permit, and shall be expressly tailored to the particular facts and legal issues under consideration. Normally, a brief in support of or in resistance to a motion should be no more than a few pages long and rarely should such a brief exceed fifteen pages in length.

A review of all 158 pages of the plaintiff's briefs indicates that plaintiff's counsel used too much time adding detail after detail. "Overloading the document, piling fact upon fact, argument upon argument, in hope that if one line of reasoning does not impress the court, another one will—is no way to solve the problem [of effectiveness]. The arguments most likely to persuade the court may get lost in the thicket." R. Goldfarb and J. Raymond, *Clear Understandings: A Guide to Legal Writing* 75 (1982). This Court is persuaded that counsel could reasonably have achieved the same effect in one-half of the time and an even smaller fraction of the pages used here. For that reason, the plaintiff will be compensated for one-half of the 87.2 hours spent preparing briefs.

█ A further type of request is too uneconomical to allow. Six entries describe time spent personally filing documents at the federal courthouse. In his reply brief, plaintiff's counsel defends each trip. However, billing the claimant for these trips at $70.00 or $125.00 an hour is not reasonable. Based on this Court's estimate of the time to travel to and from the

Clerk's office, one-half hour will be deducted from the plaintiff's billable hours for each trip.

■ The plaintiff has requested compensation for 66.8 hours performed below the judicial level. When a claimant prevails at the administrative level, he must look to the Secretary for compensation under § 406. However, courts have split on the question of whether a counsel whose client prevailed at the judicial level must also look to the Secretary to collect for administrative work, or whether the court may award a fee for hours performed at each level. *Compare Fenix v. Finch,* 436 F.2d 831, 838 (8th Cir.1971) *with Bix, supra,* and *Finch v. Heckler, supra.* While this Court has previously awarded fees for administrative work for reasons given by Judge Vietor in *Bix,* a split within the Northern District developed in July 1986 when Chief Judge Lay held that an SSA award may only be given by a court for work at the judicial level. *Climer v. Bowen,* 649 F.Supp. at 182. This Court will now follow *Climer* and exclude 66.8 hours in setting the fee.

■ After the deductions described above are made, counsel is entitled to compensation for 121.4 hours of work at a rate of $125.00 per hour, or $15,175.00, in addition to $520.70 in expenses. Because this amount is less than 25% of past-due benefits (in this case $17,039.35), it will be awarded.

IT IS THEREFORE ORDERED that the plaintiff's motion for an award under the Equal Access to Justice Act is denied.

IT IS FURTHER ORDERED that the Secretary is directed to award $15,695.70 to plaintiff's counsel from withheld benefits in compensation for work performed at the judicial level.

IT IS FURTHER ORDERED that plaintiff's counsel is not foreclosed from seeking compensation from the Secretary for work performed at the administrative level.