866 F.2d 1167
 57 USLW 2492, 13 Fed.R.Serv.3d 678,
24 Soc.Sec.Rep.Ser. 489,
Unempl.Ins.Rep. CCH 14499A
 Marie F. STRAW, John P. Garcia, Plaintiffs-Appellees,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellant.
Ralph E. DAVIS, Michael H. Pelton, Plaintiffs-Appellants,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellee.
 Nos. 87-4036, 87-4059, 87-4238 and 87-4243.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 5, 1988.
Decided Feb. 1, 1989.
 
 1
 Lloyd E. Hartford, Billings, Mont., for plaintiffs-appellees.
 
 
 2
 Frank Meglen, Asst. U.S. Atty., Billings, Mont., Carl E. Rostad, Asst. U.S. Atty., George F. Darragh, Jr., Asst. U.S. Atty., Great Falls, Mont., and Jeffrey C. Blair, Office of the Gen. Counsel, Denver, Colo., for defendant-appellant.
 
 
 3
 Appeal from the United States District Court for the District of Montana.
 
 
 4
 Before ALARCON and BEEZER, Circuit Judges, and HENDERSON*, District Judge.
 
 THELTON E. HENDERSON, District Judge:
 I. INTRODUCTION
 
 5
 All four cases involve appeals of attorneys fees awarded to Lloyd Hartford, an attorney in Billings, Montana, who regularly represents social security disability claimants before the Social Security Administration and the federal courts. In Straw v. Bowen, CV84-023 JFB (D.Mont., Feb. 3, 1984), and Garcia v. Bowen, CV83-301 BLG (D.Mont., Nov. 22, 1983), the Secretary of Health and Human Services ("Secretary") appeals the fee awards, arguing that they are excessive; in Davis v. Bowen, CV84-034 GF (D.Mont., Feb. 3, 1984), and Pelton v. Bowen, CV85-222 PGH (D.Mont., Aug. 15, 1985), plaintiffs[1] appeal the fee awards, arguing that the hourly rate is too low. In all four cases, the only issue is the appropriate hourly rate; neither the Secretary nor plaintiffs in Davis and Pelton take issue with the district courts' determinations of the appropriate number of hours to be compensated.
 
 
 6
 We hereby reverse and remand in Straw, Garcia, and Davis, and affirm in Pelton.
 
 II. FACTS AND PROCEEDINGS BELOW
 A. Straw
 
 7
 Straw filed an application for disability benefits to be paid beginning on November 11, 1982. The Secretary denied her application at the initial and reconsideration levels. In October 1983, the Administrative Law Judge ("ALJ") denied her application, and the Appeals Council affirmed on January 1984.
 
 
 8
 Straw timely appealed her claim to federal district court, and in March 1985, the court remanded the case to the Secretary. In December 1985, the ALJ found her eligible for benefits, and after an additional remand order by the Appeals Council, the ALJ issued a second favorable opinion in September 1986. The Council affirmed that decision in January 1987, and awarded her back benefits of $21,732.47.
 
 
 9
 The Secretary withheld a total of $5438.95, or 25% of that sum for payment of attorney fees, as he regularly does in successful appeals. Plaintiff then filed a motion for the fees, requesting that the entire 25% be awarded to attorney Hartford. The 25% figure is derived from the contingency fee contract negotiated between the plaintiff and her attorney; it is also the maximum amount allowed under 42 U.S.C. Sec. 406(b)(1). See discussion of that statute infra at 1168-69.
 
 
 10
 On May 22, 1988, the district court awarded the entire 25% to the attorney. On July 17, the Secretary filed a timely notice of appeal from that Order.
 
 B. Garcia
 
 11
 The procedural history of Garcia is nearly identical to Straw; the Secretary denied Garcia's application for benefits, the district court remanded the case to the ALJ, and Garcia won a favorable judgment several years later. Following that victory, the same district judge awarded attorney Hartford 25% of the back benefit recovery. The Secretary timely appealed that decision.
 
 C. Davis
 
 12
 Davis' case is identical to Straw and Garcia with one important difference: a different district court did not award the full 25% fee. Instead, the court set an hourly rate of $75, and multiplied the rate by the number of hours reasonably expended. Plaintiff then timely appealed that decision.
 
 D. Pelton
 
 13
 Pelton's case is identical to Davis' case, except that Pelton did not file a timely notice of appeal of the underlying fee order, though he did file a timely appeal of the court's denial of his motion for reconsideration. We should therefore review the denial of the motion for reconsideration. Because review of Pelton involves a different standard, we discuss this case at the end of the opinion. See infra at 1171-1172.III. LAW GOVERNING SOCIAL SECURITY ATTORNEY FEES AWARDS
 
 
 14
 Attorney fee awards for social security disability cases are governed by 42 U.S.C. Sec. 406(b)(1), which provides that:
 
 
 15
 Whenever a court renders a favorable judgment to a claimant ... who was represented before the court by an attorney, the court may ... allow as part of its judgment a reasonable fee for such representation, not in excess of 25% of the total past-due benefits to which the claimant is entitled.... In case of any such judgment, no other fee may be payable ... for such representation except as provided in this paragraph.
 
 
 16
 This statute is not a fee-shifting statute. Instead, it is a parens patriae limit on the amount of fees an attorney may receive from a disability claimant. As the Tenth Circuit noted, Congress passed the statute to limit contingency fees, since such arrangements "often resulted in an inordinate deprivation of benefits otherwise payable to the client." Watford v. Heckler, 765 F.2d 1562, 1566 (11th Cir.1985). On the other hand, Congress did intend to "ensure that attorneys would receive some fees for their representation," and authorized the Secretary to withhold a percentage of the recovery to achieve this goal. Id.
 
 
 17
 Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), instructs the bench and bar on how to establish appropriate hourly rates. The issue in Blum was the appropriate fee award for attorneys who work in a non-profit legal aid office. After rejecting a cost-based standard for determining the appropriate hourly rate, see infra at n. 4, the court stated that "the prevailing attorneys [must] justify the reasonableness of the requested rate or rates." To assist the court, "the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those of lawyers of reasonably comparable skill, experience, and reputation." Id. at 896 n. 11, 104 S.Ct. at 1547 n. 11.
 
 
 18
 The court also places a rebuttal burden upon the party opposing the fee request. The court declined to consider the defendant's argument that plaintiff's claimed hours were unreasonable, since "defendant failed to submit any evidence challenging the accuracy and reasonableness of the hours charged." Id. at 892 n. 5, 104 S.Ct. at 1545 n. 5.
 
 
 19
 Thus, the Blum court clearly intended that fee applicants would put forth factual evidence to support their requested hourly rates, and that the opposing party would rebut that evidence with factual evidence as well.
 
 
 20
 A recent Ninth Circuit case on this issue is also worth introductory mention. In Starr v. Bowen, 831 F.2d 872 (9th Cir.1987), a case remarkably similar to this one, we reversed a fee award granted under section 406(b)(1). In Starr, the district court awarded plaintiff's attorney 25% of the benefit recovery, giving "great weight" to the contingency fee agreement negotiated by the claimant and the attorney. Id. at 873. The Secretary appealed, and the Court reviewed the amount of the fee award for an abuse of discretion.
 
 
 21
 The court first stated that the district court must make its own inquiry as to the reasonableness of the fee request and recognize that the award is paid from an "already inadequate" stipend for the claimant. Starr, 831 F.2d at 873, citing MacDonald v. Weinberger, 512 F.2d 144, 146-47 (9th Cir.1975). The district court may "consider the fact that [the claimant's] attorney accepted employment on a contingency fee basis," but should not unquestioningly approve the amount negotiated by the parties. Starr, 831 F.2d at 873. Instead, the district court should determine a "lodestar" figure based on a reasonable number of hours and the prevailing market rate. Starr, 831 F.2d at 874, citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983). After determining the lodestar figure, the district court may adjust the fee by considering the twelve factors identified in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).[2]
 
 
 22
 Since the district court summarily approved the 25% figure, without calculating the lodestar figure, the court remanded for a "more detailed inquiry into the reasonableness of the fee award." Starr, 831 F.2d at 874.
 
 
 23
 The awards granted in Straw and Garcia display the same problem. In both cases, the district court approved the entire fee request, for hourly rates of approximately $240 and $210, respectively. The court did not explain why it chose the 25% figure, nor justify such high hourly rates.
 
 
 24
 The Secretary challenges the Straw and Garcia fee awards, arguing correctly that these hourly rates are much higher than those ordinarily approved. Indeed, the cases cited by plaintiffs in support of the hourly rates approved by the district court, with one exception, all involve hourly rates between $50 and $150. See e.g., Losco v. Bowen, 638 F.Supp. 1262, 1265 (S.D.N.Y.1986), listing disability cases with hourly rates between $50 and $100.
 
 
 25
 We have reviewed numerous cases, and the highest rate we found was $150 in Matter v. Bowen, 30 Unempl.Ins.Rep. (CCH) p 17,392 (M.D.Pa.1987). In Matter, the court relied on Andrews v. Bowen, 640 F.Supp. 1001 (W.D.N.C.1986), which awarded a fee of $5000 for 1.9 hours but was later vacated and remanded by the Fourth Circuit. Andrews v. Bowen, 818 F.2d 28 (4th Cir.1987). The Matter court also justified the fee by noting the difficulty of the case, the long delay between the initiation of the litigation and the payment of the fees, and the high quality of the attorney's performance. Matter at 2099-41.
 
 
 26
 Other cases that have awarded significantly higher hourly rates than the "standard" $75 include Brissette v. Heckler, 784 F.2d 864, 866 (8th Cir.1986), and Roberts v. Bowen, 652 F.Supp. 276, 280-81 (N.D.Iowa 1986). In Brissette, the court reversed an hourly rate of $60, primarily because the plaintiff's attorney accepted a high risk case previously rejected by a legal aid office. Similarly, in Roberts, the case was "atypical" and unusually complex, since it involved thirteen different ailments. With the exception of these courts, the overwhelming majority award hourly rates of $100 or less. Losco, 638 F.Supp. at 1265.
 
 
 27
 Plaintiffs do not argue that the rates in Straw and Garcia are justified by the cases' novelty or complexity; both involved standard form complaints, routine legal challenges to the Secretary's determinations, and a relatively small amount of attorney time and effort. Plaintiffs claim that the rates are justified by the fact that the attorney accepted the case on a contingency basis.
 
 
 28
 The contingency factor does have some bearing on the hourly rate: we have repeatedly held that the risk of nonpayment is a factor to be considered in adjusting the lodestar figure. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975). However, the contingency here does not justify a tripling of the standard hourly rate. There is no evidence that the Straw and Garcia cases were unusually risky, and the district court made no such finding. Therefore, the risk of nonpayment does not support affirmance of this fee award.
 
 
 29
 Plaintiffs next argue that these hourly rates are justified by the "big picture": the individual rates in these two cases may be high, but they are balanced by the low fee awards (or no fee awards) in other cases. Plaintiffs add an accountant's report to this contention which apparently demonstrates that the attorney's operating costs are between $180 and $190 an hour;[3] the $75 figure is therefore too low.
 
 
 30
 We reject this argument as well. Plaintiffs are essentially asking victorious claimants to "subsidize" the claims of losing claimants; they ask us to take large portions out of disabled people's recoveries to fund the representation of other claimants. This we should not do: this subsidization is fundamentally unfair to the claimants who depend upon back benefit recoveries, contrary to congressional intent to protect claimants by limiting fee awards, and at odds with our own admonition in Starr, 831 F.2d 872, that the district court should determine a reasonable fee based on the services performed in the case before it. Id. at 873-74.
 
 
 31
 On the other hand, Congress did intend to ensure adequate representation of social security claimants. Watford, 765 F.2d at 1566. We therefore instruct the district court to select an hourly rate which balances the competing interests, and is based on the burdens established by Blum and the factors outlined by Kerr.
 
 
 32
 Accordingly, we find the awards in Straw and Garcia to be an abuse of discretion. We vacate those decisions, and remand them to the district court for further proceedings consistent with this opinion.
 
 
 33
 In Davis, a different district court awarded a fee with an hourly rate of $75. Plaintiff objects to this award, arguing that it is unreasonably low.
 
 
 34
 Plaintiff relies heavily on Coup v. Heckler, 834 F.2d 313 (3d Cir.1987). In Coup, the claimant agreed to pay the attorney the maximum allowable 25%, but the district court awarded a much lower fee based on a $75 hourly rate.
 
 
 35
 The Third Circuit reversed and remanded the case. The court noted "several problems with the district court's consistent application of a $75 per hour rate in social security appeals." Id. at 324. The court noted that $75 is lower than the rate paid under the Equal Access to Justice Act, that the client approved an award in excess of that fee, and that a rigid application of that rate is "at odds with the more flexible standard" that the Secretary himself applies in awarding fees for the administrative portions of social security appeals. Id. The court instructed the district court that multipliers are appropriate for social security cases, and that the hourly rate should reflect the fact that the claimant "was willing to pay more to induce his attorney to take a case when there was a risk of nonpayment." Id.
 
 
 36
 The district court in Davis may have committed the same error; with little explanation, the court approved a $75 rate, despite the contingency. A district court should not rubberstamp the $75 figure but should instead adhere to Blum and Kerr to set appropriate hourly rates for each case before it. We therefore also reverse and remand Davis for further proceedings consistent with this opinion.
 
 
 37
 The Secretary correctly argues that Pelton comes before us on a different procedural posture. The district court issued an attorney fee order on June 30, 1987. Plaintiff filed a motion for reconsideration on July 17, more than 10 days after the order was issued, in violation of Federal Rule of Civil Procedure Rule 59(e). Since that motion was untimely, it did not toll the sixty day time period for appealing the June 30 Order. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1419 (9th Cir.1984).
 
 
 38
 The district court denied the reconsideration motion on August 24, 1987. Plaintiff filed a notice of appeal on September 28, more than sixty days after the June 30 Order but less than sixty days after the August 24 Order. Accordingly, the propriety of the original order is not before us, and the only issue we may review is whether the district court abused its discretion by denying plaintiff's untimely motion for reconsideration. Fiester v. Turner, 783 F.2d 1474, 1476 (9th Cir.1986).
 
 
 39
 This technically makes a difference: since the motion for reconsideration under Rule 59 was untimely, we may hear this appeal only by construing plaintiff's motion as based on F.R.C.P. 60(b)(1) or 60(b)(6). Rule 60(b)(1) authorizes the alteration of judgment based on "mistake, inadvertence, or excusable neglect"; 60(b)(6) allows alteration for "any other reason justifying relief from the judgment." A motion under either of these rules may be filed more than ten days after entry of judgment.
 
 
 40
 If the motion is construed as a Rule 60(b)(1) motion, plaintiff must show that the district court committed a specific error. Thompson v. Housing Authority of the City of Los Angeles, 782 F.2d 829, 832 (9th Cir.1986). Plaintiff does not even allege any particular mistake; he merely argues that the district court abused its discretion by setting a low hourly rate. Therefore, plaintiff is not entitled to relief under this section.
 
 
 41
 Similarly, if we construe the motion as a Rule 60(b)(6) motion, plaintiff must demonstrate "extraordinary circumstances" to justify relief from judgment. United States v. Sparks, 685 F.2d 1128, 1130 (9th Cir.1982). Plaintiff cannot prevail under this standard. Plaintiff did receive a fee for the work performed; the amount may be smaller than plaintiff's attorney had hoped, but "[p]urported deficiencies in the amount of and procedures for attorneys fee awards clearly do not constitute a circumstance of hardship that cries out for the unusual remedy of the reopening of a final judgment under Rule 60(b)(6)." O'Grady v. Secretary of Health and Human Services, 661 F.Supp. 1030, 1034 (E.D.N.Y.1987).
 
 IV. CONCLUSION
 
 42
 We hereby reverse and remand in Straw, Garcia, and Davis, and affirm in Pelton.
 
 
 
 *
 Honorable Thelton E. Henderson, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 We will refer to "plaintiffs," not "plaintiffs' attorney," even though the attorney is the genuinely interested party in this appeal
 
 
 [2]
 This hybrid approach survives the Supreme Court's opinion in Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 562-68, 106 S.Ct. 3088, 3097-99, 92 L.Ed.2d 439 (1986), though the Court ruled that the lodestar figure is presumptively the correct fee, and should not regularly be enhanced by multipliers
 
 
 [3]
 This data was not in the record before the district court, and the Secretary has moved to strike it. We agree with the Secretary that we should not review this evidence. Rachbach v. Cogswell, 547 F.2d 502, 504 (10th Cir.1976). Even if we did review that evidence, the Blum court specifically rejected the use of a cost-based standard for setting hourly rates. Blum v. Stenson, 465 U.S. at 894, 104 S.Ct. at 1546