**Nancy Lee FERLAND, Plaintiff–Appellant,**

v.

**CONRAD CREDIT CORP., a California corporation; Gregg A. Michel, PH.D., an individual; Does 1–20, Inclusive, Defendants–Appellees.**

**No. 99–56625.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 2001

Filed April 5, 2001

Deborah L. Raymond, Law Offices of Deborah L. Raymond, Solana Beach, California, for the plaintiff-appellant.

Michael E. Ripley, San Diego, California, for the defendant-appellee.

Before: TROTT, THOMAS and BERZON, Circuit Judges.

PER CURIAM:

Following her successful suit against the Conrad Credit Corp. ("CCC") for violations of the Fair Debt Collection Practices Act (the "Collection Act"), 15 U.S.C. § 1691 et seq., the district court granted Nancy Lee Ferland's request for attorneys' fees. In doing so, however, the court declined to grant fees for certain time Ferland's attorney submitted on the case and approved fees for less than half the remaining total number of hours the attorney actually expended. Ferland appeals the fee award. We find error in some of the district court's calculations, and conclude that its explanation for the very large cut in the number of hours compensated was not adequate. We therefore remand for correction of the calculation errors and for reconsideration of the across-the-board cut in the number of hours covered by the award.

## I. Background

In October 1997, Ferland sued CCC and Dr. Gregg A. Michel for violations of the Collection Act. She alleged that CCC employees harassed her while attempting to collect a debt she had formerly owed Michel but had already paid in full. The court dismissed Ferland's claim against Michel on summary judgment. The case against CCC was tried to a jury.

Ferland prevailed at trial. The jury's award, however, fell short of what she had requested. The jury found in Ferland's favor on only four of eight counts, and rather than the $1000 in statutory damages and $65,000 in compensatory damages she had sought, it awarded $800 and $10,200 respectively.

After the verdict, Ferland filed a request for attorneys' fees. She sought compensation for 290 hours at a rate of $195 per hour—a total of $56,550.[1] The district court found this request unreasonably high and reduced Ferland's attorney's billing rate to $160 per hour, primarily on the basis that $160 per hour was the appropriate rate for an attorney of her experience level. The court also subtracted from the fee award time it believed was expended solely on the losing claim against Michel. Finally, the district court reduced the compensable hours by over half, to 120, because of the lack of complexity of the case and Ferland's attorney's inefficiency and inexperience, resulting in a total award of $19,200. Ferland now challenges the adequacy of the district court's award. Although not contesting the rate reduction, she challenges, on several grounds, the large reduction in compensable hours.

## II. Analysis

We review the factual determinations underlying an award of attorneys'

---

1. The attorney's affidavit listed 294.5 total hours she expended on the case, which she then reduced by 4.5 hours to reflect time spent solely on issues related to Michel.

fees for clear error, *Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir.2000), and the legal premises a district court uses to determine an award de novo. *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 528 (9th Cir.1998). If we conclude that the district court applied the proper legal principles and did not clearly err in any factual determination, then we review the award of attorneys' fees for an abuse of discretion. *Id.* As part of the abuse of discretion review, we consider whether the district court met its obligation "to articulate ... the reasons for its findings regarding the propriety of the hours claimed or for any adjustments it makes either to the prevailing party's claimed hours or to the lodestar." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992).

## A. Time Attributed to the Michel Claim

Ferland asked to be reimbursed for 290 hours of attorney time. The district court reduced this figure to 261.2 hours by eliminating time that it attributed to Ferland's failed claim against Michel.[2] Ferland does not challenge the district court's authority to eliminate time spent on the claim against Michel, but does maintain that the district court clearly erred in some of its calculations regarding those claims. We agree.

■ First, the district court discounted time entries for preparation of a response to a Counter Motion for Summary Judgment on October 14, 17, 18 and 19, 1998. Because only CCC filed such a motion, the district court erred when it attributed part of that time to the claim against Michel and reduced the time by half. Second, the district court eliminated all hours Ferland's counsel spent preparing for and taking Michel's deposition. Since Michel was a witness in Ferland's case against CCC,

the district court erred by not allowing attorneys' fees for at least some of that time.

We therefore remand this issue to the district court so that it may recalculate the hours attributable to Michel and CCC. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

## B. Percentage Reduction

Much more consequential in terms of its potential impact on the total fee award is the controversy between the parties concerning the district court's determination that only 120 of the hours Ferland's attorney expended on the litigation should be compensated.[3]

The district court first found that Ferland's attorney lacked adequate experience to justify her requested hourly rate. It observed that "[a]n experienced attorney commands high hourly rates because he or she is *efficient* at performing the necessary tasks" (emphasis added), and accordingly reduced the hourly rate for Ferland's counsel from $195 to $160 per hour. This $160 rate was based in large part on the district court's objective analysis of the prevailing rates of similarly-experienced attorneys in large California law firms. Ferland does not challenge the rate reduction.

■ The district court then considered whether to eliminate specific hours from Ferland's fee request as excessive, but decided not to do so, stating:

> [T]he court is already reducing Plaintiff's hourly rate request in part because Ms. Raymond's inefficiency indicates such a reduction is appropriate. Therefore, the court will not eliminate specific hours from the fee request related to excessive hours.

To this point, the district court's reasoning was sound. When it finally computed the

---

2. To be precise, the district court identified 32.7 hours it attributed to Ferland's claim against Michel. Although it makes no difference to our decision in this matter, it is not clear to us how the district court, after so

concluding, arrived at 261.2 hours as the time attributable to the claim against CCC.

3. There is no suggestion that Ferland's attorney did not actually spend the amount of time on this case reflected in her billing records.

lodestar amount,[4] however, the court reversed course and did reduce the attorney's hours—by more than half—because of "the relative lack of complexity of the case, the lack of jury trial experience of counsel, and because of counsel's inefficiency in prioritizing time." In so doing, the district court did not identify any particular excessive hours, nor did it explain in any other fashion how it decided how many hours to cut, or by what percentage to reduce the documented hours.

Ferland contends that the district court impermissibly "double-counted" her attorney's inefficiency, first by reducing her hourly rates on account of her inexperience, and then by reducing her hourly total for, partially, the same reason. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 489 (9th Cir.1988) (noting that in "ordinary cases ... double counting is impermissible"). The district court's reductions, however, were not *necessarily* duplicative. The district court reduced the hourly rate awarded to Ferland's counsel because it found that she was inexperienced, but the court could also reasonably have decided that even taking into account her inexperience, some of her hours were excessive as compared to what one would expect of a similarly inexperienced attorney.

That is not, however, how the district court seems to have reached its result. Instead, after discounting the hourly rate, the court *declined* to eliminate particular excessive hours on account of the attorney's inefficiency, noting that the inefficiency was already adequately accounted for. Then, the district court went on nonetheless to grant a wholesale discount on the total number of hours when computing the lodestar figure. The district court did not explain the apparent internal contradiction in its reasoning. That omission in itself is sufficient to require a remand for a "concise but *clear* explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933 (emphasis added).

Quite aside from the apparent contradiction, the district court's method of reducing the hours for which fees are available is one that, under our cases, requires further explanation. The district court simply announced a bottom-line number of compensable hours, with no attempt to calibrate the number chosen to demonstrable inefficiency in carrying out particular tasks. We held in *Gates v. Deukmejian* that such a " 'meat-axe approach' " to reducing fees is acceptable in some circumstances. *Gates*, 987 F.2d at 1399. The method is controversial, however, *id.*, and does not discharge the district court from "its responsibility to set forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction nor from its duty to independently review the applicant's fee request." *Id.* at 1400 (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933).

For example, in *Gates*, the defendants in a complex civil rights class action suit challenged the district court's across-the-board ten percent cut of an attorneys' fee award, contending that the reduction did not cut deep enough and that a more particularized review would have gone further. This court held that "decisions ... employing percentages in cases involving large fee requests are subject to heightened scrutiny." *Id.*[5] We then went on to vacate the

---

4. District courts must calculate awards for attorneys' fees using the "lodestar" method. *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir.2000); *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363. Although in most cases, the lodestar figure is presumptively a reasonable

fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it. *See, e.g., Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir.2000); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) (enumerating factors district courts may consider in determining fee awards).

5. The *Gates* critique of across-the-board cuts in hours expended is no less applicable

district court's determination of the appropriate lodestar for reassessment, stating:

> The lack of even a brief explanation of how and why [the district judge] selected ten percent and the fact that the record not only fails to illuminate the court's reasoning but casts doubt on the very existence of such a rationale, leads us to the ineluctable conclusion that the district court, faced with an admittedly voluminous paper record, threw up its hands and relied on [an] ... arbitrary, ten percent figure without itself reviewing the record.

*Id.* at 1401; *see also id.* at 1399 (holding that a district court may not "slash[ ] broad categories of activity by arbitrary percentages 'on the basis of his inarticulable and unsubstantiated dissatisfaction with lawyers' efforts to economize,' rather than by disallowing specific items of unreasonable activity and providing examples of excessive time spent on legal research" (quoting *In re Continental Illinois*, 962 F.2d 566, 570 (7th Cir.1992))).

■ We have, since *Gates*, approved a percentage or across-the-board approach in cases where much smaller fee awards were at stake,[6] but only when the district court provides a reasonable explanation for the cut. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (upholding across-the-board reduction of $300,000 fee award); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (upholding fifty-percent reduction of a $70,000 fee award for lack of success).[7] Indeed, the practice of reducing fees without identifying the hours spent inefficiently *or* providing any explanation of the particular degree of reduction adopted is no more defensible in relatively straightforward cases such as this one than in complex cases such as *Gates*, for several reasons.

■ First, where the underlying case is complex, the billing records are likely to be voluminous, and the judicial time expended in detailing excessive hours can therefore be similarly great. Where, however, the underlying case was not a complicated one, the district court that presided over the litigation should be able, after briefing by the parties, to look over the billing records for specific inefficiencies without expending a great deal of judicial time doing so. At least, the district court should be able to "sample" the records to show that there is a pattern of demonstrable inefficiency. *See Gates*, 987 F.2d at 1399. If the district court nonetheless decides to reduce the lodestar hours on a pure across-the-board basis, then we need an explanation for that choice if we are meaningfully to review the fee award for abuse of discretion. *Id.* at 1400.

Second, the number of hours expended in cases that are relatively straightforward may often seem high if considered in the aggregate, without perusing in detail the actual billing entries. The Federal Rules of Civil Procedure and the implementing rules of individual district courts, perhaps unfortunately, take a one-size-fits-all approach, and do not provide for procedural

---

where, as here, the district court reduction is expressed as an absolute number of hours rather than as a percentage. Obviously, the same reduction can be expressed either way. The pertinent consideration is not the mathematical rubric used but whether the reduction is across-the-board or calibrated in some way to the actual entries in the billing records.

6. The fee award at issue in *Gates* was for more than $5 million.

7. *Gates* held that district courts have the authority to make across-the-board cuts "when faced with a massive fee application." *Id.* at 1399. There is, however, more general language in *Gates* as well. *See id.*, at 1400 ("[P]ercentages ... are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards."). Although *Gates* quoted language from another circuit's cases indicating that there might be *more* tolerance for "meat-axe" approaches to hours reduction in less complex cases, *Gates* did not address directly the degree of appellate scrutiny accorded smaller fee awards when the district court adopts an across-the-board approach, because no such award was before the court. As noted in the text, we have, in later cases, applied the *Gates* approach without regard to the size of the award.

short cuts for relatively simple litigation. Compliance with procedural requirements such as meet and confer sessions between counsel, Fed.R.Civ.P. 16(b), 26(f), early neutral evaluation conferences, S.D. Cal. Civ. L.R. 16.1(c), scheduling conferences, Fed.R.Civ.P. 16(b), automatic disclosure requirements, Fed.R.Civ.P. 26(a), written discovery plans, Fed.R.Civ.P. 26(f), several-step processes for resolution of discovery disputes, Fed.R.Civ.P. 37(a), pretrial conferences, Fed.R.Civ.P. 16(a), proposed pretrial orders, S.D. Cal. Civ. L.R. 16.1(f)(7), case management conferences, S.D. Cal. Civ. L.R. 16.1(d), and expert witness reports, Fed.R.Civ.P. 26(a)(2), can result in attorneys' fees for relatively simple cases that seem unreasonably high after a first—or even second or third—glance at the bottom line. Some systematic perusal of the actual billing entries will often confirm that the reason for the seemingly high fee was not inefficiency, but careful compliance with the attorneys' responsibilities.

■ Third, in less complex cases there may be a tendency to assume—as the district court may have assumed here—that the time spent by an opposing counsel experienced in the subject matter is a good measure of the time reasonably expended. But in small cases as well as large ones, opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on. Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive. *See Johnson v. Univ. College of the Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.1983). Rather, any such comparison must carefully control for factors such as those mentioned, as well as for the possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work.

Finally, even where the district court does explain adequately the decision to cut the lodestar hours compensated by the across-the-board method, there is still the need for the district court to provide, after an independent perusal of the record, some explanation for the precise reduction chosen. *Gates'* concern that a district court's "cursory statement affords us no explanation as to how the court arrived at ... the correct reduction and thus, it does not allow for us meaningfully to assess its determination," 987 F.2d at 1400, applies equally when the fee award is relatively small as when it is large. In either case, "[a]bsent some indication of how the district court exercised its discretion, we are unable to assess whether the court abused that discretion." *Id.*

Here, the district court did not explain except at the most general level why it reduced by more than half the number of attorney hours for which Ferland could be compensated,[8] and did not explain at all the particular level of reduction—from 261.2 to 120 hours—chosen. Because we cannot determine the basis for the district court's decision to so substantially reduce the hours for which it permitted fees, we vacate the fee award and remand for reassessment in accord with the principles discussed above. *McGrath v. County of Nevada*, 67 F.3d 248, 253 (9th Cir.1995) ("If the district court fails to provide a clear indication of how it exercised its discretion, we will remand the fee award for the court to provide an explanation."); *Bernardi v. Yeutter*, 951 F.2d 971, 974 (9th Cir.1991) (requiring the district court to provide "some explanation as to how [it] arrived at its figures" (quoting *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1447 (9th Cir.), *modified*, 742 F.2d 520 (9th Cir.

---

**8.** As noted, that general explanation is itself puzzling, as it appears to contradict the district court's earlier observation that the reduction in the hourly rate adequately accounted for the inefficiency observed.

1984))); *Cunningham,* 879 F.2d at 485 (same).

### III. Conclusion

For the foregoing reasons, we RE-MAND this matter to the district court for further proceedings consistent with this order.