**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0934n.06
Filed: December 26, 2006

**Nos. 05-6548 and 05-6706**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DONALD R. DEPRIEST, | ) | |
| | ) | |
| Plaintiff-Appellant Cross-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ELLEN H. HARDYMON, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee (05-6548) | ) | |
| Defendant (05-6706), | ) | |
| | ) | |
| MSB FINANCIAL SERVICES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant-Appellee Cross-Appellant. | ) | |

Before: KENNEDY, COLE, and COOK, Circuit Judges.

COOK, Circuit Judge. Donald R. DePriest appeals the district court's judgment for the

defendants, Ellen Hardymon and MSB Financial Services Corporation ("MSB"), on his claims of

fraud, negligent misrepresentation, and fraudulent inducement to contract. MSB cross-appeals the

amount of attorney's fees awarded. We affirm.

I

Ellen Hardymon is a director of MSB and a controlling shareholder and chairman of the board of MSB's ultimate parent corporation. MSB bought a controlling interest in SecurAmerica (a company founded by Henry Brookfield III and W. Randall Reagan that made secured loans to small businesses) pursuant to a Shareholders' Agreement. The Shareholders' Agreement had two important provisions. First, it employed Reagan and Brookfield as SecurAmerica officers. Second, it included a "Takeout Right": if SecurAmerica missed certain earnings projections, MSB would have the right to resell its shares, and Reagan, Brookfield, and SecurAmerica would have the right to repurchase them. If they did not exercise that repurchase right, a majority of shareholders could fire Reagan and Brookfield and force SecurAmerica to liquidate and distribute its assets.

In 1998, after regulators determined that MSB's investment in SecurAmerica was not permissible, MSB applied for a regulatory exception. While the application pended, SecurAmerica missed an earnings target, so instead of pursuing the exception, MSB decided to exercise its Takeout Right. MSB gave Reagan and Brookfield until November 15, 1999, to find financing for the share repurchase. Hardymon and MSB did not know (at least initially) that Reagan and Brookfield were looking for a third-party purchaser rather than seeking financing to repurchase the shares themselves. Hardymon was the only representative of MSB who dealt with this transaction.

Reagan and Brookfield identified Donald DePriest, an old acquaintance of Brookfield, as a potential purchaser while continuing to advise Hardymon that they themselves would be "the purchasers of the shares" and DePriest would be the "liquidity source" to fund the stock purchase.

The stock sale closed on November 15, 1999. DePriest wired $750,000 to MSB and executed a promissory note ("Note") for $157,640.42 in favor of MSB. The Note included a provision entitling its holder to recover attorney's fees if forced to bring suit to collect on the Note.

Over a year later at a SecurAmerica board meeting, DePriest expressed—for the first time—concern about the status of SecurAmerica's loans. Upon investigation thereafter, he discovered that many loans were either at risk or in default and some large loans were unsecured by a promissory note, among other irregularities. According to DePriest, SecurAmerica was "essentially defunct" and his stock worthless. DePriest made one payment on the Note, but then stopped paying and sued MSB and Hardymon for fraud, negligent misrepresentation, and fraudulent inducement to contract. MSB counterclaimed to collect on the Note. After a bench trial, the district court rejected DePriest's claims and held in favor of MSB on its counterclaim. The court awarded attorney's fees to MSB under the terms of the Note, but awarded a lesser fee amount than MSB requested. DePriest now appeals the judgment against him, and MSB cross-appeals the amount of attorney's fees awarded.

II

DePriest argues that the district court erred in excluding as hearsay his proffered testimony about allegedly false representations Reagan and Brookfield made to convince him to purchase MSB's SecurAmerica stock. At trial, the court initially allowed the testimony, conditioned on DePriest establishing that Reagan and Brookfield were acting as agents of the defendants, qualifying

their statements as admissible non-hearsay under Fed. R. Evid. 801(d)(2)(C). At the close of DePriest's case, the defendants challenged the proof as insufficient to show agency, and the district court agreed to disregard the conditionally admitted evidence. On appeal, DePriest renews his argument that Reagan and Brookfield were agents of the defendants.

For purposes of this evidentiary question, the existence of an agency relationship is a preliminary question of fact, so this court applies a clear-error standard. *Cf. United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005) (holding that the existence of a conspiracy is a preliminary question of fact for purposes of admissibility under the hearsay exception for co-conspirators' statements). We discern no clear error in the district court's conclusion that Reagan and Brookfield were not agents of the defendants, so DePriest's proffered testimony was not admissible under Rule 801(d)(2)(C).

The district court found that Hardymon never asked or directed Reagan or Brookfield to talk to DePriest about buying MSB's SecurAmerica shares. In fact, the district court concluded that Reagan and Brookfield were acting in their own interest—not on behalf of Hardymon and MSB. That is, Reagan and Brookfield also wanted to find a buyer for these shares because MSB had exercised its Takeout Right, and unless they could purchase the shares (or find another purchaser), they would be fired and SecurAmerica would be liquidated.

DePriest points to a September 7, 1999, draft letter from Hardymon to Brookfield that reads: "You recently advised me that you have identified a purchaser for the 750,000 shares . . . ." To DePriest, this letter indicates that MSB and Hardymon acquiesced in Reagan's and Brookfield's efforts to find a third-party purchaser, and that acquiescence, DePriest argues, suffices to establish an agency relationship. The district court, however, was unconvinced because a September 9, 1999, letter from Reagan advising Hardymon that he and Brookfield would be "the purchasers of the shares" and that "Don DePriest is the liquidity source" suggests not that Reagan and Brookfield were acting as agents but instead that they were fulfilling their repurchase obligations under the Takeout Right. Because the district court's account of the evidence is "plausible," its finding that no agency relationship existed cannot be clear error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).[1]

III

DePriest argues that he was entitled to judgment in his favor on his claims of fraud, negligent misrepresentation, and fraudulent inducement to contract. "On appeal from a judgment entered

---

[1]DePriest also argues that the statements of Reagan and Brookfield are not hearsay because he offered them to prove the falsity (not the truth) of the matter asserted. *See* Fed. R. Evid. 801(c). It is generally true that statements offered for their falsity are not hearsay, *see United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986), but the district court properly excluded the statements because they were not relevant. *See* Fed. R. Evid. 401. The statements are only material to DePriest's claims if Reagan and Brookfield were acting as agents of MSB or Hardymon, and we accept the district court's finding that they were not.

following a bench trial, we review the district court's factual findings for clear error and its legal

conclusions de novo." *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004). We

discern no error in the district court's judgment.

No matter which theory DePriest presses, he must prove that his reliance on statements

attributable to MSB was reasonable. *See, e.g.*, *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct.

App. 2005) (fraud); *Hardcastle v. Harris*, 170 S.W.3d 67, 82–83 & 83 n.25 (Tenn. Ct. App. 2004)

(negligent misrepresentation); *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000)

(fraudulent inducement to contract). As the plaintiff, DePriest bears the burden of proving

reasonable reliance on his part. *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App.

2000). He cannot carry this burden.

DePriest acknowledges his sophisticated-investor status, but pegs the reasonableness of his

failure to independently confirm the soundness of his investment on the reliability of the parties on

the other side of the deal. That is, because he "was dealing with experienced bankers," sophisticated

businessmen operating in a "highly regulated" industry, DePriest maintains it was not unreasonable

to neglect to delve into the underpinnings of the investment. Adopting this rule, however, would

extinguish the reasonableness requirement.

In this case, what DePriest himself knew about the industry undermines his position: he was

sufficiently familiar with the asset-based lending industry to know that such a lender is financially

healthy only if its loans are properly secured. Given his knowledge of the secured-lending industry and his general sophistication in business matters, his total failure to investigate SecurAmerica's financial condition renders any reliance unreasonable. *See, e.g.*, *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 123 (Tenn. Ct. App. 2001) ("'[G]enerally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach.'" (quoting *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989))); *Lambdin v. Garland*, 723 S.W.2d 953, 955–56 (Tenn. Ct. App. 1986); *Pakrul v. Barnes*, 631 S.W.2d 436, 438 (Tenn. Ct. App. 1981).

IV

MSB cross-appeals the district court's award of attorney's fees, arguing that it was entitled to more under the terms of the Note executed by DePriest. This court reviews a district court's award or denial of attorney's fees for abuse of discretion. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 348–49 (6th Cir. 2000). We conclude that the district court was within its discretion to award $38,249.77 in fees.

The Note provides that "[i]f suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees." MSB first claimed entitlement to $256,761.61 in fees, representing the amount expended in all litigation between the parties. The district court rejected this computation and held,

based on the plain language of the Note, that MSB could recover only amounts expended pursuing its counterclaim to recover on the Note—not amounts spent defending against DePriest's claims. MSB submitted a revised calculation of $76,499.54 as amounts traceable to the counterclaim. The court rejected this calculation and awarded MSB $38,249.77, noting that the revised fee request represented almost 50% of the amount at stake in this uncomplicated case.

MSB appeals the rejection of its first calculation by invoking *Chrysler International Corp. v. Cherokee Export Co.*, 134 F.3d 738 (6th Cir. 1998), in which this court affirmed, on similar facts, a district court's fee award. But the fact that this court once affirmed an award under similar circumstances does not mean that it is an abuse of discretion for a later district court not to award all fees claimed. Moreover, as explained below, the district court here was actually correct to award less than MSB requested because the Note's fee provision is ambiguous and therefore should be construed against its drafter, MSB.

MSB's interpretation of the fee provision is reasonable, but so is the district court's. It is reasonable to read the Note to restrict recovery to fees traceable to MSB's counterclaim because it avoids a strange scenario that could result from MSB's construction: if MSB could recover all fees in any litigation related to the Note, that could include fees for unrelated claims permissively joined as a plaintiff, or for non-compulsory counterclaims brought as a defendant.

Because the Note's fee provision is "susceptible to more than one reasonable interpretation," it is ambiguous, *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002), and must be construed against its drafter. *Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 531 (Tenn. 1991). Therefore, the district court was justified in rejecting MSB's initial fee request.

MSB appeals the rejection of its revised calculation on two bases. First, it argues that the district court should not have deviated from the lodestar fee. But this argument fails because MSB did not establish its lodestar fee with sufficient precision: the district court noted that although MSB submitted a spreadsheet attempting to identify the hours attributable to the counterclaim, "the spreadsheet . . . concededly represents an[] approximation, at best." The district court thus applied the principle that "'[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly.'" *See Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). We discern no abuse of discretion in this methodology. Second, MSB cites *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149–50 (9th Cir. 2001), for the proposition that when a district court reduces a fee calculation on the grounds that the issue litigated was not complicated, it should review the billing records to identify specific inefficiencies. But this argument fails, too. Not only do district courts in the Sixth Circuit have discretion to elide Ninth Circuit precedent, but we also believe that the district court actually did provide a precise explanation of its fee reduction allowing for meaningful abuse-of-discretion review. *See id.* at 1150.

The court noted that despite a good-faith effort, MSB could only approximate the fees attributable to the counterclaim. It also noted that MSB's revised fee estimate represented nearly 50% of the amount at stake in the litigation (i.e., the value to be recovered under the Note) in a case where DePriest "did not contest his liability . . . outside of his affirmative claims of fraud." This provides an adequate basis for meaningful appellate review, and we discern no abuse of discretion.

V

For the reasons stated above, we affirm.