**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CLARA CRAWFORD,
                    *Plaintiff,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,
                    *Defendant-Appellee,*

BRIAN C. SHAPIRO,
                    *Real-party-in-
                    interest-Appellant.*

No. 06-55822

D.C. No.
CV-00-011884 (AN)

Appeal from the United States District Court
for the Central District of California
Arthur Nakazato, Magistrate Judge, Presiding

RUBY WASHINGTON,
                    *Plaintiff,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,
                    *Defendant-Appellee,*

YOUNG CHO,
                    *Real-party-in-
                    interest-Appellant.*

No. 06-55954

D.C. No.
CV-03-06884 (AN)

Appeal from the United States District Court
for the Central District of California
Arthur Nakazato, Magistrate Judge, Presiding

13687

DAPHNE M. TREJO,
           *Petitioner-Appellant,*

           v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,
           *Respondent-Appellee.*

No. 06-56284

D.C. No.
CV-98-5662 (RNB)

OPINION

Appeal from the United States District Court
for the Central District of California
Robert N. Block, Magistrate Judge, Presiding

Argued and Submitted
February 15, 2008—Pasadena, California

Filed September 25, 2008

Before: Betty B. Fletcher, Daniel M. Friedman,* and
N. Randy Smith, Circuit Judges.

Opinion by Judge Friedman;
Dissent by Judge B. Fletcher

---

*The Honorable Daniel M. Friedman, Senior United States Circuit
Judge for the Federal Circuit, sitting by designation.

## COUNSEL

Lawrence D. Rohlfing, Santa Fe Springs, California, for the petitioner-appellant in all three cases.

No appearance for the respondent-appellee in any of the three cases.

---

**OPINION**

FRIEDMAN, Circuit Judge:

We decide each of these three appeals, which were argued together, in a single opinion. In these cases, lawyers who successfully represented social security claimants under contingent-fee contracts challenge the sufficiency of the fees the United States District Court for the Central District of California awarded for the services they performed in the judicial phase of the cases. The lawyers contend that in setting their fees the district court failed to follow the methodology the Supreme Court prescribed in *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), for determining attorney fees in social security cases.

We hold, however, that in awarding the fees in these cases the district court did not deviate from the standards announced in *Gisbrecht* and did not abuse its discretion. We, therefore, affirm in all three cases.

I.   Each of these cases followed the same pattern: (1) after the Social Security Administration ("Administration") denied a claim for benefits, the claimant retained an attorney to institute a judicial challenge to the administrative action and signed a written agreement under which the attorney would be paid twenty-five percent of "the back pay awarded"; (2) after suit was filed, the case was remanded to the Administration; (3) the Administration awarded the claimant benefits, including substantial past benefits; (4) the attorney requested from the district court a fee of less than twenty-five percent of the back benefits; and (5) the district court (acting through a magistrate judge) awarded the attorney less than the amount sought.

Each of the three claimants was represented by a different attorney: Brian C. Shapiro ("Shapiro") represented Clara Crawford, Young Cho ("Cho") represented Ruby Washington, and Denise Bourgeois Haley ("Haley") represented Daphne M. Trejo. The three attorneys were affiliated with the Lawrence D. Rohlfing ("Rohlfing") law firm, which specializes in social security matters. Since the firm handled all its work on a contingent-fee basis, it had no regular hourly billing rates. In each case the district court calculated what would be a reasonable hourly rate for the work performed. The differences among the three cases relate to the work the attorney performed in the particular case, the time expended, the amount of back benefits awarded, the attorney fee requested, and the fee awarded.

In the *Crawford* case (No. 06-55822), Shapiro expended 19.5 hours of his own time and 4.5 hours of paralegal time. The past-due benefits awarded were $123,891.20, twenty-five percent of which was $30,972.80. Shapiro sought a fee of $21,000.00, which was 16.95 percent of the award. The court determined that a reasonable fee would be $8,270.00, which it reduced by $3,150.00 to reflect the fee already paid under the Equal Access to Justice Act, producing a net fee award of $5,120.00.

In the *Washington* case (No. 06-55954), Cho devoted 17.45 hours of his time and 4.7 hours of paralegal time. The past-due benefits awarded were $76,041.00, twenty-five percent of which was $19,010.25. Cho sought a fee of $11,500.00, which was fifteen percent of those benefits. The court determined that a fee of $8,825.53 would be reasonable, which it reduced by the $2,800.00 that had already been paid under the Equal Access to Justice Act, resulting in a net fee award of $6,025.33.

In the third case, *Trejo* (No. 06-56284), Haley spent 25.5 hours of her time and 1.1 hours of paralegal time. The past-due benefits awarded were $172,223.25, twenty-five percent

of which was $43,055.75. Haley sought a fee of $24,000.00, which was fourteen percent of the benefits. The district court determined that a reasonable fee would be $12,650.40, which it reduced by the $3,200.00 prior payment made under the Equal Access to Justice Act, resulting in a net fee of $9,450.00.

We discuss in detail, in Parts IIB and IID, below, the court's determinations and reasoning in setting the fee in each case.

II.    A.    Before *Gisbrecht*, courts ordinarily used a "lode-star" calculation for determining a "reasonable" attorney fee under fee-shifting statutes that required the losing party to pay the prevailing party's legal fees. *See Gisbrecht*, 535 U.S. at 801-02. Under that calculation, to produce a reasonable fee a court multiplied the "number of hours reasonably devoted to each case . . . by a reasonable hourly fee." *Id.* at 797-98.

**[1]** The lodestar calculation also was used in determining reasonable attorney fees in social security cases, although the Social Security Act does not shift payment of attorney fees from the prevailing to the losing party. Instead, it provides for payment of a successful claimant's attorney fee out of the benefits the claimant recovers. A court rendering a judgment favorable to a social security claimant represented by an attorney may "allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S.C. § 406(b)(1)(A). Such fee will be paid to the attorney "out of, and not in addition to, the amount of such past-due benefits." *Id.* When *Gisbrecht* was decided, such contingent-fee contracts were "the most common fee arrangement between attorneys and Social Security claimants." *Gisbrecht*, 535 U.S. at 800.

*Gisbrecht,* in which the Supreme Court reviewed one of our decisions, was such a lodestar social security attorney fee

case. There, the district court used the lodestar calculation to determine attorney fees in four social security cases, but "set hourly lodestar rates lower than those that Plaintiffs had requested." *Gisbrecht v. Apfel*, 238 F.3d 1196, 1198 (9th Cir. 2000). We affirmed the attorney fee awards, stating that "[t]his court follows the 'lodestar' method of calculating fees under 42 U.S.C. § 406(b)(1)(A)," and rejected the contention that "the district courts abused their discretion by refusing to increase the lodestar fees based on the contingent nature of their fee agreements." *Id.* at 1197, 1198-99.

**[2]** The Supreme Court reversed. The Court rejected this court's view that the lodestar calculation was the sole basis for determining attorney fees under the Social Security Act and that a contingent-fee agreement was not to be considered. It "conclude[d]" that "§ 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht*, 535 U.S. at 807 (footnote omitted). It added that "[w]ithin the 25 percent boundary . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." *Id*. The Court additionally stated:

> Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review.

*Id.* at 808. The Court concluded the opinion by stating that:

> The courts below erroneously read § 406(b) to override customary attorney-client contingent-fee agreements. We hold that § 406(b) does not displace contingent-fee agreements within the statutory ceil-

> ing; instead, § 406(b) instructs courts to review for
> reasonableness fees yielded by those agreements.
> Accordingly, we reverse the judgment of the Court
> of Appeals for the Ninth Circuit and remand the case
> for further proceedings consistent with this opinion.

*Id.* at 808-09.

**[3]** The Court's holding was narrow: that, in setting reasonable attorney fees under contingent-fee agreements in social security cases, courts cannot base their calculations solely on lodestar calculations. Instead, courts must look primarily to the contingent-fee specified and then, if necessary, adjust the fee to reflect the circumstances of the particular case. The Court stated that the attorney had the burden of showing that "the fee sought is reasonable for the services rendered." *Id.* at 807. The Court then discussed five examples of ways in which the contingent-fee arrangement could be tested for reasonableness: (1) the character of the representation; (2) the results the representative achieved; (3) if an attorney were responsible for delay; (4) if benefits were large in comparison to the amount of time spent on the case; and (5) a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge. *Id.* at 808.

The Court did not decide, or indicate any views on, the following issues:

1.    Whether "contingent-fee agreement[s] between claimant and counsel, if not in excess of 25 percent of past-due benefits, [were] presumptively reasonable." *Gisbrecht*, 535 U.S. at 792.

2.    The extent to which, if any, courts could utilize a lodestar calculation based upon an appropriate hourly rate and the hours properly spent on the case, in determining the reasonability of the fee.

The Court did not indicate how or on what basis district courts were to determine that a fee was reasonable, but apparently left it to the court's discretion. *See id*. at 808. In each of these cases, the district court followed the precepts of *Gisbrecht* in setting a reasonable fee.

B. In its orders, the district court noted that *Gisbrecht* controls. In *Crawford*, the court stated that its "determination . . . is governed" by *Gisbrecht*, in which "the Supreme Court resolved a division among the Circuits on the appropriate method of calculating fees under § 406(b). Rejecting the 'lodestar method' which several of the Circuits (including the Ninth Circuit) had been applying, the Supreme Court held: . . . ." The order then quoted most of the language from *Gisbrecht* referred to in Part IIA of this opinion. In *Washington*, the same magistrate judge used the same language. In *Trejo*, a different magistrate judge used, and quoted, almost identical language in discussing *Gisbrecht*.

The court in *Crawford* set forth seven items it had "considered" "[i]n determining whether the $21,000.00 award sought by Rohlfing is reasonable for the services rendered in the proceedings before this Court." Those items included the following:

1. There was "no basis for finding that there was any fraud or overreaching by Rohlfing in the making of the contingent fee agreement with plaintiff."

2. The fee sought "is within the 25% 'boundary' and less than the total amount of fees that plaintiff agreed to pay Rohlfing under the terms of the contingent fee agreement."

3. "Rohlfing was able to persuade the Commissioner to stipulate to a remand which ultimately resulted in a fully favorable decision awarding back benefits in the amount of $123,891.20 to Plaintiff."

4. "This is not an instance where, due to excessive delay attributable to plaintiff's counsel, the back benefits accumulated during the pendency of the case in court."

5. "[I]t would not be unreasonable for a law firm having the same degree of experience, expertise and reputation in the legal community as Rohlfing to have normal hourly billing charges" under which "adjusted for inflation the 19.5 hours of attorney time plus 4.5 hours of paralegal time correspond to total hourly fees of $5,907.14." These are the same hours and inflation adjustments Rohlfing presented to the Court.

6. Using these figures, the $21,000.00 sought

includes an enhancement of $15,092.86, which represents 256% of the $5,907.14 figure for the risk of nonpayment (i.e., the "contingency factor"). The Court has duly considered Rohlfing's rationale for the enhancement sought and does not find it to be persuasive. The Court notes that Rohlfing has not provided any data regarding his firm's success rate that would enable the Court to assess the risk assumed by his firm in representing social security benefits claimants in the Cent[r]al District of California. Moreover, to the extent that the success rate of plaintiff's counsel is attributable to his special skills and expertise in this area (as distinguished from his selectiveness in the cases he agrees to take on), the Court already has taken into account his skills and expertise in arriving at the figure of $5,907.14 as the pre-enhancement value of the services rendered. The Court therefore finds that plaintiff's counsel has not done an adequate job of convincing the Court that the enhancement sought here is reasonable under the circumstances presented. . . . The Court finds that a reasonable enhancement here would be no more than 40% of

the $5,907.14 figure (i.e., $2,362.86), which would result in a total fee award of $8,270.00.

"Put another way, it appears to the Court that the enhancement sought here by plaintiff's counsel is very excessive, and would constitute an unreasonable "windfall," when the amount of back pay benefits awarded is compared to the amount of time counsel spent on the case. The Court finds that a reasonable enhancement here would be no more than 40% of the $5,907.14 figure (i.e., $2,362.86), which would result in a total fee award of $8,270.00.

"Based upon the foregoing considerations, the Court finds and concludes that the $21,000.00 in fees yielded by the contingent fee agreement and sought by plaintiff's counsel is completely unreasonable under the circumstances, and that a substantial reduction is warranted."

The court's order in the *Washington* case, authored by the same magistrate judge, discusses similar factors the court "considered" "[i]n determining whether the $11,500.00 award sought by Plaintiff's counsel is reasonable for the services rendered in the proceedings before this Court." In addition, the court included the factor that "Plaintiff's counsel did not have to do much work to persuade the Commissioner to stipulate to a remand because it was very clear that the ALJ erred and a remand was warranted. Accordingly, Plaintiff's counsel incurred very little risk in this matter." The court also rejected the lawyer's argument that this case could be compared to class action securities litigation, in which much larger attorney fees were awarded. The court stated:

> The complexity of the procedural and substantive issues in class action securities cases, and the risks of prosecuting those types of cases, eclipse those in social security cases. In social security cases, the costs of prosecuting the cases are relatively nominal because most of the plaintiffs are allowed to file

their complaints without the prepayment of the filing fees, the issues are narrow, and the briefing in this Court is generally limited to preparing a joint stipulation. The same is not true in class action securities cases where it is not unusual for plaintiffs' counsel to invest millions of dollars in a case, and engage in a substantial amount of discovery, pretrial briefing and hearings, just to resolve issues relating to class certification in addition to doing the same and more with respect to prosecuting cases on the merits. The complexity and costs of providing notice to the members of the class is another reason for the large enhancements in class action securities cases.

The court concluded that "the enhancement sought here by Plaintiff's counsel is excessive and would constitute an unreasonable 'windfall.' Therefore, the Motion is denied to the extent it seeks § 406(b) fees in the total amount of $11,500.00. On the other hand, the Court finds a reasonable enhancement here to be 40% of the $6,303.95 figure (i.e., $2,521.58), which results in a total fee award of $8,825.53."

Finally, in *Trejo*, the court discussed eight factors it had "considered" "[i]n determining whether the $24,000.00 award sought by plaintiff's counsel is reasonable for the services rendered." Several of these factors were phrased in language similar to that in *Crawford*. The court also stated: "The high quality of the representation provided in this case by plaintiff's counsel is evidenced by the fact that, in the face of an adverse ALJ decision which the Appeal Council already had adopted, plaintiff's counsel was able to persuade the Commissioner to stipulate to a remand which ultimately resulted in a fully favorable decision awarding over twelve years of back benefits."

The court concluded that, based upon the time properly spent on the case and the appropriate hourly charges for the

lawyer and paralegal, an appropriate fee would be $6,325.20. The court found that the attorney had

> done a wholly inadequate job convincing the Court that the 279% enhancement sought here is reasonable under the circumstances presented. Put another way, it appears to the Court that the enhancement sought here by plaintiff's counsel is grossly excessive and would constitute an unreasonable 'windfall,' when the amount of back pay benefits awarded is compared to the amount of time counsel spent on the case. Even after taking into account the 7-year delay in the receipt of § 406(b) fees, the Court finds that a reasonable enhancement here would be no more than 100% of the $6,325.20 figured, which would result in a total fee award of $12,650.40.

The court then stated:

> Based upon the foregoing considerations, the Court finds and concludes that the $24,000.00 in fees sought by plaintiff's counsel is not reasonable, and that a further reduction to $12,650.40 is warranted.

**[4]** C.   The district court's orders in these three cases show that, in determining a reasonable fee, the court in each case complied with the *Gisbrecht* principles. In each case the court stated that it was following *Gisbrecht* and quoted the pertinent portions of that opinion. The court recognized the primacy of the contingent-fee agreements by first determining that they met the § 406(b)(1) guidelines, and then testing them for reasonableness. *Id.* at 808.

**[5]** In *Crawford* and *Trejo*, the court explicitly stated that, considering all the circumstances, a substantial reduction in the fee sought, which was within but less than the twenty-five percent contingent fee, was required to produce a reasonable fee. Although the *Washington* court did not explicitly state

that it was reducing the fee sought in light of the factors it had considered, such ruling was implicit in the *Trejo* decision, and this was what the court did (as distinguished from what it said). In each case, the court also stated that the attorney had not met his or her burden of showing that the fee sought was reasonable. The district court's reduction of the contingent fees in these three cases accorded with *Gisbrecht's* recognition that "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order." 535 U.S. at 808.

The district court's analysis of the relevant factors in these cases, including the twenty-five percent contingent-fee agreement, starkly contrasts with the way the district court determined the fees in *Gisbrecht*. There, the district court based its determination of a reasonable fee solely on "lodestar rates" and refused to increase those rates to reflect the contingent-fee agreements. *See Gisbrecht*, 238 F.3d at 1198-99. Here, on the other hand, the lodestar calculation was but one of several factors the district court considered when testing the contingent-fee agreement for reasonableness after "looking first to the contingent-fee agreement." *Gisbrecht*, 535 U.S. at 808.

**[6]** We read *Gisbrecht* not to prohibit a district court from making lodestar-type calculations, but only from relying exclusively on such calculations and refusing to consider the contingent-fee agreement. Here, the district court noted that *Gisbrecht* controls, and considered the contingent-fee agreements. The district court, however, concluded that substantial reductions in the fees under those agreements were necessary for the fees to meet the statutory standard of reasonableness. Those rulings complied with the requirements of *Gisbrecht*.

**[7]** Unlike the dissent, we do not read the Supreme Court's *Gisbrecht* opinion as mandating any particular procedure or format that the district courts must follow in determining a reasonable attorney fee in social security cases. The Court did

not, as the dissent apparently concludes, prescribe that in every case the district court mechanically must begin its analysis with the twenty-five percent contingent fee and then make any reduction in that amount that appears appropriate in the particular case.

**[8]** As we have noted above, what *Gisbrecht* held was that "§ 406(b) does not displace contingent-fee agreements within the statutory ceiling; instead, § 406(b) instructs courts to review for reasonableness fees yielded by those agreements." 535 U.S. at 808. The methodology by which a district makes such reasonableness determinations is for that court to select in the exercise of its sound discretion. In making these determinations, it would be preferable for a district court to begin with the contingency-fee agreement and decrease from there, rather than increase from a lodestar calculation. It does not seem to be an abuse of discretion, however, to use the latter approach as long as the court takes the necessary factors into consideration.

**[9]** The district courts' determinations of a reasonable fee in each of these cases satisfied the *Gisbrecht* standards.

**[10]** D.   Once we conclude that the district court's fee determinations satisfied *Gisbrecht*, the remaining question is whether the district court abused its discretion in setting the fees. This court uses the "abuse of discretion" standard in reviewing social security attorney fee awards. *See Allen v. Shalala*, 48 F.3d 456, 457 (9th Cir. 1995) *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789 (2002).

As the district court noted, it considered a number of factors. While those factors have been previously outlined in this opinion, we again provide these factors to evidence the amount of explanation the district courts provided. In *Crawford*, the court considered the experience, expertise, and reputation of the firm in determining an hourly fee and accepted counsel's estimate of the amount of time spent on the case.

The court then applied the inflation rate counsel presented to it and calculated a reasonable fee. Then the court increased that fee by 40 percent because (a) there was not excessive delay in getting the result and (b) plaintiff's counsel was able to persuade the Commissioner to stipulate to a remand which ultimately resulted in a fully favorable decision. However, the court would not increase it by 256 percent (the amount counsel requested), because plaintiff's counsel did not provide him the success rate data. After arriving at that figure, the court then reduced the $21,000 claimed by plaintiff's counsel to that figure, saying "a substantial reduction is warranted."

In *Washington*, the court again considered the experience, expertise, and reputation of the firm in calculating an hourly fee and applied it to the amount of time that counsel had requested. The court then applied the inflation rate counsel had presented to it to calculate a reasonable fee. Then the court increased the fee by 40 percent, because (a) the Commissioner stipulated to the remand, thereby sparing plaintiff and his counsel of the need to research and prepare an exhaustive argument in support of the remand or award of benefits and (b) there was no excessive delay in getting the result. However, the court would not increase it by 82 percent (the amount counsel requested), because (1) "counsel did not have to do much work to persuade the Commissioner to stipulate to a remand, and (2) it was very clear that the ALJ erred and a remand was warranted," therefore counsel "incurred very little risk in this matter." The court also rejected a comparison between this case and securities litigation and wrote that counsel "had not provided specific data regarding his particular success rate that enables the Court to assess the true risk assumed by him."

In *Trejo*, the court did not accept counsel's request for time spent by the attorney or paralegal, instead adjusting the appropriate hours spent on the case. The court also adjusted the inflation rate to be applied to an hourly fee. However, the court calculated the hourly fee based on the experience,

expertise, and reputation of the firm. The court then increased the fee by 100 percent, because (a) the high quality of representation provided in the case, evidenced by the fact counsel had convinced the Commissioner to stipulate to a remand (which ultimately resulted in a fully favorable decision) in the face of an adverse ALJ decision and (b) although there was excessive delay, it was not due to Plaintiff's counsel. However, the court would not increase the fee by 279 percent, because (1) counsel provided no data regarding the law firm's success rate enabling the court to assess the risk assumed by counsel; (2) there was no evidence her firm was precluded from any other employment due to their acceptance of this case; and (3) the case did not entail unduly short time limitations. After arriving at that figure, the court then reduced the $24,000 (claimed by plaintiff's counsel) to that figure, saying "a further reduction is warranted."

[11] The selection and evaluation of the appropriate factors, both pro and con, for determining a reasonable attorney fee in a particular case involves the essence of discretionary action. As the Supreme Court indicated, the district court's determination of a reasonable fee ordinarily is entitled to "highly respectful review." *Gisbrecht*, 535 U.S. at 808. In setting reasonable fees in these cases, the district court did not abuse its discretion. Unlike the dissent, we conclude that the opinions of the magistrate judges who decided these cases adequately explained the basis and reasons for their decisions.

The orders of the district court awarding attorney fees in these three cases are AFFIRMED.

---

B. FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. In the majority opinion, the panel has decided three discrete appeals because one overarching issue controls all of them: Has the district court followed the man-

date of *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002)? In that case, the Supreme Court reversed the Ninth Circuit's opinion in *Gisbrecht v. Apfel*, 238 F.3d 1196 (9th Cir. 2000), disapproving fifteen years of Ninth Circuit practice regarding how to determine attorney fees under 42 U.S.C. § 406(b)(1)(A). By affirming the fee awards in these cases, the majority opinion effectively reinstates the Ninth Circuit's same old methodology by permitting the district court to make adjustments from the lodestar calculation rather than from the percent of recovery specified in the contingent fee agreement. Further, the majority ignores the basic principle that this court cannot review for abuse of discretion but rather should remand for explanation if the district court fails to explain its decision.

I

We first used the lodestar method to determine a reasonable fee under § 406 in *Starr v. Bowen*, 831 F.2d 872 (9th Cir. 1987). *See Allen v. Shalala*, 48 F.3d 456, 458 (9th Cir. 1995). Under that method, the district court determined the reasonable fee by multiplying the reasonable hourly rate by the number of hours reasonably expended on the case. *Gisbrecht*, 238 F.3d at 1197-98. The district court could then adjust the amount of the fee award by applying the twelve factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), including "whether the fee is fixed or contingent." *Gisbrecht*, 238 F.3d at 1198 (quoting *Kerr*, 526 F.2d at 70).

Although the district court could consider the contingent nature of the fee agreement, we repeatedly held that failure to do so was not an abuse of discretion. *See id.* at 1199 (citing *Straw v. Bowen*, 866 F.2d 1167, 1170 (9th Cir. 1989) and other cases). In fact, although the district court was supposed to consider a request to increase the award because of the contingent nature of the fee agreement, it was "not required to articulate its reasons for accepting or rejecting such a request." *Id.* (internal quotations and citations omitted).

This approach was flatly rejected by the Supreme Court. It held a district court charged with making a fee award under § 406(b)(1)(A) must respect "the primacy of lawful attorney-client fee agreements," *Gisbrecht*, 535 U.S. at 793, "looking first to the contingent-fee agreement, then testing it for reasonableness," *id.* at 808. The resulting award is unreasonable, and thus subject to reduction by the court, if the attorney provided substandard representation or engaged in dilatory conduct, or if the "benefits are large in comparison to the amount of time spent on the case." *Id.* The attorney bears the burden of establishing that the fee sought is reasonable. *Id.* at 807. "[A]s an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement," the attorney may provide the court with a record of the hours worked and its regular fee. *Id.* at 808.

An examination of the fee awards in these cases makes it starkly evident that the district courts did not respect the primacy of the attorney-client fee agreements. In each case, the client signed a contract providing that the attorney would receive 25% of the back pay awarded if benefits were awarded following appeal to the district court. Had the district court awarded the full contractual fee, the attorneys in these cases would have received fees ranging from $19,010 to $43,000. Instead, they received amounts ranging from $8,825.53 to $12,650.40. These fee awards represented 6.68% to 11.6% of the benefit awards. Put another way, the attorneys received 53.57% to 73.3% less than the contingency contracts provided.[1]

---

[1]The attorneys in these cases recognized that a full 25% fee would be unreasonable. They therefore sought fees ranging from $11,500 to $24,000, which represented 13.95% to 16.95% of the benefits awarded, a substantial reduction from the amount contracted for. Although I do not hold the view that where, as here, an attorney seeks less than 25% of the back-benefits awarded, the fee request is presumptively reasonable, I believe that the attorney's request should be entitled to some deference in such cases. I find it particularly problematic that the district court in *Craw-*

The language in each of the district court orders also makes clear that the district court failed to apply the reasonableness test mandated by *Gisbrecht*. Although the *Gisbrecht* court did not provide a definitive list of what factors should be considered in determining whether a fee is reasonable or how those factors should be weighed, the majority is wrong to conclude that the Court "did not indicate how or on what basis the district courts were to determine that a fee was reasonable." Maj. Op. at 13697. Rather, the Supreme Court directed courts to consider "the character of the representation and the results the representative achieved" and to rely on the district court's expertise in making reasonableness determinations.[2] *Gisbrecht*, 535 U.S. at 808. *See also Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005) ("The [Supreme] Court did not provide a definitive list of factors to be considered because it recognized that the judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts." (quotation and alterations omitted)). The Supreme Court also indicated that the district court could consider the lodestar calculation, but *only as an aid* in assessing the reasonableness of the fee. *See Gisbrecht*, 535 U.S. at 808. The lodestar cannot serve as the baseline for determining the fee.

---

*ford* reduced the fee sought by 60%. The attorney in that case requested less than 17% of the back-benefits awarded—a substantial reduction from what the contract provided for—and ultimately received less than 7% of the claimant's award. Although that figure represented a premium over the lodestar, the fact that it was so much lower than the contracted-for amount strongly suggests that the district court gave insufficient deference to the fee agreement.

[2]The majority improperly characterizes *Gisbrecht* as providing five distinct examples of ways to test for reasonableness. Maj. Op. at 13696. Rather, *Gisbrecht* makes clear that the district court may reduce the fee based on "the character of the representation and the results the representative achieved." 535 U.S. at 808. Pursuant to this evaluation the court may properly reduce the fee for substandard performance, delay, or benefits that are not in proportion to the time spent on the case. *Id.* As evidence of the reasonableness of the resulting fee, the court may require the attorney to submit a record of hours spent and a statement of normal hourly billing charges. *Id.*

The majority correctly observes that the district court orders quote extensively from *Gisbrecht*. The orders even cursorily discuss the character of the representation—noting that it was skillful and not dilatory—before concluding that the requested fee would represent a windfall to the attorneys. But this sort of parroting of language from *Gisbrecht* does not mean that the district courts actually applied its teachings. As the orders make clear, the district courts in these cases started with the lodestar calculation, and then adjusted slightly to account for the contingent nature of the representation. This is contrary to the Supreme Court's clear directive that the district court must first look to the fee agreement and then adjust downward to account for the particular lack of difficulty in the representation. *See id. See also Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc) ("In the event the court chooses not to give effect to the terms of the agreement, it should state for the record the deductions being made and the reasons therefore."). That the courts determined that the fee agreements "met the § 406(b)(1) guidelines" does not demonstrate that the district courts "recognized the primacy of contingent-fee agreements". Maj. Op. at 13701. Rather, it merely shows that the courts acknowledged their existence. Because the district courts did not give proper consideration to the fee agreements and inverted the reasonableness analysis prescribed by *Gisbrecht*, the fee orders in these cases should be vacated, and the cases remanded for further consideration.

II

In addition to inverting the *Gisbrecht* analysis, each district court failed to explain why it chose to enhance the lodestar calculation by the factor that it did. The Supreme Court has held that, although the district court has discretion to determine a reasonable fee, it must provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). If the district court fails to do so, this court is unable to review the award for abuse of discretion, and we must vacate and remand. *See, e.g., Ferland*

*v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001); *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992).

Each district court explained on a general level the reason for the reduction, concluding that the requested fee would result in a windfall to the attorney because it was significantly larger than the lodestar amount. Not only did each court start from the wrong premise, each failed to give any explanation for the particular fee awarded. Instead, each court increased the lodestar by a percentage but failed to relate that percentage to the circumstances of the individual case. Under these circumstances, our precedent requires that we remand for reassessment of the fee request. *Cf. Ferland*, 244 F.3d at 1151 ("[T]he district court did not explain except at the most general level why it reduced by more than half the number of attorney hours for which Ferland could be compensated, and did not explain at all the particular level of reduction—from 261.2 to 120 hours—chosen. Because we cannot determine the basis for the district court's decision to so substantially reduce the hours for which it permitted fees, we vacate the fee award and remand for reassessment in accord with the principles discussed above." (footnote omitted)).[3]

### III

Finally, to the extent that the district court orders in *Trejo*

---

[3]Although both *Ferland* and *Gates* involved fee awards under fee-shifting statutes, the basic principle that the district court must explain the basis for its award applies with equal force in § 406(b) cases. The Supreme Court made clear in *Gisbrecht* that reasonableness review in § 406(b) cases is essentially the same as reasonableness review in other contexts. *See Gisbrecht*, 535 U.S. at 808. Additionally, several of our sister circuits have held that the basic principle that the district court must explain its decision applies in these cases. *McGuire v. Sullivan*, 873 F.2d 974, 985 (7th Cir. 1989) (affirming where the district court "made specific findings regarding the difficulty, riskiness and other relevant factors which demonstrate that a twenty-five percent contingency contract is reasonable"); *Rodriquez*, 865 F.2d at 746.

and *Crawford* give some explanation of why the court did not award the specific fee requested, that explanation was based on a further misreading of *Gisbrecht*. Specifically, the orders misconstrue the nature of the risk assessment by focusing on the firm's overall success rate instead of the specific facts that make a given case more or less risky for the firm.[4] *See, e.g.*, *McGuire*, 873 F.2d at 985. For example, in *Crawford*, the district court faulted the firm for failing to "provide[ ] any data regarding [the] firm's success rate that would enable the Court to assess the risk assumed by [the] firm in representing social security benefits claimants in the Central District of California." This misstates the attorney's burden, which is to show that the fee is reasonable based on the facts of the particular case. A district court cannot reduce the amount of a fee simply because a firm is generally successful. Rather, the district court should look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case. The firm should not be penalized for providing high-quality representation that frequently results in success for its clients.

IV

The majority opinion ignores the clear instructions of the Supreme Court by affirming the district court's reliance on lodestar calculations in determining fee awards under § 406(b). It also undermines our precedent requiring that a district court explain the reason for its fee award. Because the Supreme Court has spoken in no uncertain terms to both of these issues and instructed us not to affirm where the district court bases its reasonable fee determination on a lodestar calculation or fails to adequately explain the reason for the amount of the fee award, I would vacate the district court orders and remand each of these cases for further proceedings.

---

[4]This is not the case in *Washington* where the magistrate noted that the ALJ's error was so clear that counsel did not have to work particularly hard to get the government to stipulate to a remand.