**NOT FOR PUBLICATION**



# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-16-1169-KuBH |
| | BAP No. EC-16-1283-KuBH |
| GOLD STRIKE HEIGHTS | (Related) |
| HOMEOWNERS ASSOCIATION, | |
| | Bk. No. 15-90811-E-7 |
| Debtor. | |
| | Adv. No. 15-09062-E |
| DON E. LEE, | |
| | |
| Appellant, | |
| | **MEMORANDUM**\* |
| v. | |
| | |
| GARY FARRAR, Chapter 7 Trustee, | |
| | |
| Appellee. | |

Argued and Submitted on June 21, 2018
at Sacramento, California

Filed – July 12, 2018

Appeal from the United States Bankruptcy Court

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

for the Eastern District of California

Honorable Ronald H. Sargis, Chief Bankruptcy Judge, Presiding

---

Appearances:     Appellant Don E. Lee argued pro se; Joshua P. Hunsucker
                 of Neumiller & Beardslee argued for Appellee Gary
                 Farrar, chapter 7 trustee

---

Before:  KURTZ, BRAND, and HURSH,** Bankruptcy Judges.

## INTRODUCTION

Appellant Don E. Lee filed a state court complaint against Gold Strike

Heights Association (Gold Strike 2002) and Gold Strike Heights Homeowners

Association (Gold Strike 2007), alleging that the associations had improperly

foreclosed on real property which Mr. Lee leased from Indian Village, LLC

(Indian Village).

After Gold Strike 2007 filed a chapter 7[1] petition, appellee Gary Farrar,

the chapter 7 trustee (Trustee), removed the case to the bankruptcy court and

filed a motion for judgment on the pleadings. The bankruptcy court granted

Trustee's motion, finding that Mr. Lee lacked standing because he failed to

---

[**] Hon. Benjamin P. Hursh, Chief Bankruptcy Judge for the District of Montana, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

allege sufficient facts to show an injury in fact on any of his claims, and was attempting to litigate the rights of third parties not before the court. The bankruptcy court gave Mr. Lee thirty days to file a motion to amend the complaint or dismiss the case without prejudice prior to the entry of the judgment in favor of Trustee. Mr. Lee did neither. Accordingly, the court entered judgment for Trustee on all claims for relief alleged in the complaint.

Thereafter, Trustee moved for attorneys' fees under Cal. Civ. Code § 5975 which authorizes fees to a prevailing party in a lawsuit relating to the enforcement of rights and interests under the Covenants, Restrictions, and other documents by which a homeowners association operates (Governing Documents). The bankruptcy court found that the gravamen of Mr. Lee's complaint was to enforce Gold Strike 2007's Governing Document and awarded Trustee $11, 236 in prevailing party attorneys' fees against Mr. Lee.

Mr. Lee appeals from the bankruptcy court's order granting Trustee's motion for judgment on the pleadings (BAP No. 16-1169) and from the order awarding attorneys' fees to Trustee (BAP No. 16-1283). We AFFIRM both orders on appeal.

## FACTS

**A.    Background Facts And Allegations In Mr. Lee's Complaint**

Since 2008, Mr. Lee has leased a manufactured home on a lot in the Gold Strike Heights Subdivision  (Property) which was owned by Indian Village. Mr. Lee's complaint against Gold Strike 2002 and Gold Strike 2007 arose from

3

the non-judicial foreclosure of 31 lots owned by Indian Village, including the Property leased by Mr. Lee. The factual background as alleged in the complaint is as follows.

In 2001, Westwind Development, Inc. (WDI) began developing a small residential subdivision in Calaveras County, California. As part of the development process for what is known as the Gold Strike Heights Subdivision, a homeowners association by the name of Gold Strike Heights Association was formed; i.e., Gold Strike 2002. By 2004, WDI was experiencing financial problems and sold 31 lots located within the subdivision to Indian Village which amounted to 63% of the lots in the subdivision. In 2006, Indian Village developed one lot with a manufactured home located at 145 Jasper Way, San Andreas, California, where Mr. Lee resides. Indian Village did not develop the remaining 30 lots.

In early 2007, Indian Village decided to form a new homeowners association (HOA) because Gold Strike 2002 was suspended for failing to file the required forms with the California Secretary of State and pay the required annual fees to the California Franchise Tax Board. In May 2007, the new HOA with the name Gold Strike Heights Homeowners Association; i.e., Gold Strike 2007, was incorporated. Indian Village paid its monthly assessments to Gold Strike 2007 for a number of years and then ceased making payments for various reasons, including the alleged mismanagement of the HOA.

In March 2013, Community Assessment Recovery Services (CARS), on

4

behalf of Gold Strike 2002, recorded a Notice of Delinquent Assessment against each of the 31 lots owned by Indian Village, including Mr. Lee's Property. Allegedly, Indian Village notified CARS that Gold Strike 2002 was a suspended corporation and lacked the right to carry out the foreclosure.

In September 2014, CARS held a foreclosure sale in which Gold Strike 2002 bid its claims for delinquent assessments against each lot and thus became the putative purchaser of all 31 lots owned by Indian Village. The next month, CARS recorded 31 documents entitled Certificate of Foreclosure Sale Subject to Redemption with the Calaveras County Recorder indicating that Gold Strike 2002 was the purchaser of each of the 31 lots owned by Indian Village. In January 2015, CARS recorded 31 documents entitled Trustee's Deeds Upon Sale with the Calaveras County Recorder indicating that Gold Strike 2007 was the new owner of each of the 31 lots owned by Indian Village.

After the foreclosure, Mr. Lee had various communications with Mike Cooper, the president of Gold Strike 2007. Mr. Lee demanded documentation as to who his new landlord was. He maintained that Gold Strike 2002 was a distinct entity from Gold Strike 2007. He further asserted that Gold Strike 2002 was a suspended corporation and had no authority to foreclose or transfer the lots to Gold Strike 2007. Mr. Lee contended that he did not owe rent to Gold Strike 2007, and had never rented property owned by Gold Strike 2007. In a March 9, 2015 letter, Gold Strike 2007 gave Mr. Lee 7 days from the receipt of the letter to pay $2,645.14 owed in rent or it would take steps to recover the

5

rent, including eviction.

On March 20, 2015, Mr. Lee filed the instant lawsuit against Gold Strike 2002 and Gold Strike 2007 in the California Superior Court. He alleged three causes of action in the complaint. Mr. Lee's first cause of action for declaratory relief was based on his allegations that (1) Gold Strike 2002 and Gold Strike 2007 were separate and distinct entities that were not merged; (2) Gold Strike 2002 was a suspended California corporation that could not exercise its corporate rights and powers and thus was barred from concluding the non-judicial foreclosure of the 31 lots owed by Indian Village; and (3) Gold Strike 2002 could not legally transfer its interest in Mr. Lee's Property to Gold Strike 2007. [2] Accordingly, Mr. Lee requested the court to determine the rightful owner of the Property.

Mr. Lee's second cause of action for negligent infliction of emotional distress alleged that under federal law and California law, any new owner of properties acquired by way of a foreclosure had to provide no less than ninety (90) days notice before terminating any tenant residency. Mr. Lee alleged that the president of Gold Strike 2007, Mr. Cooper, and another officer, Paul

---

[2] On the same date, Indian Village also filed a lawsuit against Gold Strike 2002 and 2007, and others. Indian Village sought the identical declaratory relief as Mr. Lee, and alleged causes of action for wrongful foreclosure and sought to quiet title. Trustee also removed this case to the bankruptcy court. After two motions for summary judgment and a trial, the bankruptcy court found in favor of Trustee and quieted title to the 31 lots in favor of Gold Strike 2007 and its successor bankruptcy estate. Indian Village appealed this ruling to the district court where it is apparently still pending.

Quent, threatened to immediately evict Mr. Lee if he did not pay them the rent demanded. Mr. Lee maintained that he suffered "substantial emotional distress and anguish" when faced with this unreasonable and unlawful demand from the board members. Mr. Lee's allegations in the third cause of action for intentional infliction of emotional distress were similar.

In his prayer for relief, Mr. Lee sought a declaration of various facts which would essentially render the foreclosure of the lots invalid and make Indian Village the owner of the lots and Mr. Lee's landlord. He also sought compensatory and punitive damages.

## B. Gold Strike 2007's Bankruptcy

After Gold Strike 2007 filed its chapter 7 petition, Trustee removed Mr. Lee's state court action to the bankruptcy court. Trustee filed a motion for judgment on the pleadings, asserting that Mr. Lee did not have standing to challenge the non-judicial foreclosure sale because he was a tenant and had no ownership interest in the Property. Trustee further argued that Mr. Lee had no basis for any claim against the bankruptcy estate (as the successor to Gold Strike 2007 against whom such claims would be asserted).

Mr. Lee responded, asserting that Trustee misstated the substance of his claims. Mr. Lee contended that the "gist" of his complaint was for the court to declare which party was correct as to several "controversial landlord-tenant issues." He argued that his action was based on his claims that Gold Strike 2002 and Gold Strike 2007 were separate and distinct entities. Accordingly, the

7

non-judicial foreclosure which was initiated and concluded by Gold Strike 2002, a suspended California corporation, was unlawful. Gold Strike 2002 also had no authority to transfer its interest in Mr. Lee's Property to Gold Strike 2007. Mr. Lee concluded that Gold Strike 2007 was not the true owner of the property and thus had no right to evict him. He argued that any rents he owed should be paid to the creditor having a deed of trust against the Property. Finally, Mr. Lee stated that if necessary, he could amend the complaint to establish standing.

On May 26, 2016, the bankruptcy court entered judgment in favor of Trustee on all claims in the complaint and against Mr. Lee. In granting the relief, the bankruptcy court found that Mr. Lee lacked standing because he failed to allege sufficient facts to show an injury in fact on any of his claims and was attempting to litigate the rights of third parties not before the court. The bankruptcy court expressly ordered that Mr. Lee could elect to file a stipulation or ex parte motion (if a stipulation could not be reached) to dismiss this adversary proceeding. Additionally, the court afforded Mr. Lee the opportunity to file a motion for leave to file an amended complaint. Mr. Lee failed to file either a stipulation or an ex parte motion to dismiss, or a motion for leave to file an amended complaint.

Trustee filed a timely motion for attorneys' fees and costs under Civil Rule 54, as incorporated by Rule 7054. The motion was based on Cal. Civ. Code § 5975 which authorizes fees to the prevailing party in an action to

8

enforce the governing documents of an HOA. Trustee alleged that Mr. Lee's action was to enforce the Governing Documents as shown by various allegations in the complaint and the prayer for relief. Trustee argued that Mr. Lee put at issue whether Gold Strike 2007 was the owner of the property and whether the foreclosure sale had been properly conducted. Trustee requested $11,236 in attorneys' fees as the prevailing party.

Mr. Lee opposed, contending that the bankruptcy court had found that he lacked standing to set aside a non-judicial foreclosure because he had no interest in the Property. Mr. Lee argued that lack of standing was the sole ground for the dismissal of the declaratory relief cause of action and there was no mention of any attempt by him to enforce Governing Documents of any HOA.

In a Memorandum Opinion And Decision issued after the hearing on the matter, the bankruptcy court found that based on numerous allegations in Mr. Lee's complaint, he asserted a claim to "enforce the Governing Documents" and thus Cal. Civ. Code § 5975 applied. The court found Trustee's request for fees in the amount of $11,326 reasonable and granted Trustee's motion.

Mr. Lee filed a timely appeal from the bankruptcy court's order granting Trustee's motion for judgment on the pleadings and from the order awarding Trustee prevailing party fees under Cal. Civ. Code § 5975.

9

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in granting Trustee's motion for judgment on the pleadings; and

Whether the bankruptcy court erred in granting Trustee's motion for attorneys' fees under Cal. Civ. Code § 5975.

## STANDARDS OF REVIEW

We review de novo whether the bankruptcy court erred when it granted Trustee judgment on the pleadings. *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011).

We review the factual determinations underlying an award of attorneys' fees for clear error, and the legal premises a bankruptcy court uses to determine an award de novo. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1147-1148 (9th Cir. 2001). The bankruptcy court's interpretation and application of a state statute governing the award of attorneys' fees is also reviewed de novo. *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

If we conclude that the bankruptcy court applied the proper legal principles and did not clearly err in any factual determination, then we review the award of attorneys' fees for an abuse of discretion. *Ferland*, 244 F.3d at

10

1147-1148. A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible or unsupported by evidence in the record. *Trafficschool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

**A.    The bankruptcy court did not err in granting Trustee's motion for judgment on the pleadings.**

### 1.    Legal Standard:  Civil Rule 12(c) Motion For Judgment On The Pleadings

Rule 7012, which incorporates Civil Rule 12(c), provides:  "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard governing a Civil Rule 12(c) motion for judgment on the pleadings is functionally identical to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). For a complaint to withstand a Civil Rule 12(c) motion for judgment on the pleadings, it must contain more detail than "bare assertions" that are "nothing more than a formulaic recitation of the elements" required for the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Courts must draw upon their "experience and common sense" when evaluating the specific context of the complaint  to determine whether it contains the necessary detail to state a plausible  claim for relief. *Id.* at 679.

When evaluating a Civil Rule 12(c) motion, the court must construe factual allegations in a complaint in the light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "'A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, [a] party is entitled to judgment as a matter of law.'" *Lyon*, 656 F.3d at 883; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

Although Civil Rule 12(c) does not mention leave to amend, courts have the discretion in appropriate cases to grant a Civil Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment. *Cagle v. C&S Wholesale Grocers Inc.*, 505 B.R. 534, 538 (E.D. Cal. 2014).

### 2. Constitutional and Prudential Standing

To invoke the jurisdiction of the federal courts, a plaintiff must establish "the irreducible constitutional minimum of standing," consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury in fact element is met if it is shown that there has been "'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* The causation element requires a showing of "a causal connection between

12

the injury and the conduct complained of," meaning that "the injury has to be fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court." *Id.* Under the third element, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

In addition to satisfying constitutional standing, a plaintiff must also satisfy prudential standing principles. Prudential standing requires that "a plaintiff . . . assert its own legal rights and . . . not assert the legal rights of others." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 907 (9th Cir. BAP 2011).

### 3. Analysis

***Mr. Lee's First Cause Of Action For Declaratory Relief***:  Declaratory relief is an equitable remedy distinctive in that it allows adjudication of rights and obligations on disputes regardless of whether claims for damages or injunction have arisen. *See 28 U.S.C. § 2201.*  The court "may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." *Id.*

Mr. Lee's declaratory relief cause of action asked the bankruptcy court to declare who the rightful owner of his Property was as between Gold Strike 2002, Gold Strike 2007, and Indian Village. He alleged that:  (1) Gold Strike 2002 and Gold Strike 2007 were separate and distinct entities; (2) the non-judicial foreclosure was initiated and concluded by Gold Strike 2002, a

13

suspended corporation, which could not lawfully foreclose on Indian Village; and (3) Gold Strike 2002 could not lawfully transfer its interest in Mr. Lee's Property to Gold Strike 2007. In his prayer for relief, Mr. Lee sought a declaration that Gold Strike 2002/2007 could not exercise its corporate rights and powers and thus was barred from first initiating and then concluding the non-judicial foreclosure.

As the bankruptcy court found, these allegations constituted a challenge to the validity of the non-judicial foreclosure sale. As a result of the alleged wrongful foreclosure, Mr. Lee sought to have the bankruptcy court declare the rights of parties not before the court, i.e., Indian Village. Nowhere in this cause of action does Mr. Lee allege an injury in fact that constitutes an invasion of a legally protected interest as to him. Under California law, the general rule is that only parties with an interest in a loan secured by real property or in the underlying property may attempt to set aside a non-judicial foreclosure. *Bank of Am. Leasing Capital LLC v. 3 Arch Tr. Servs. Inc.*, 180 Cal.App. 4th 1090, 1103 (2009). As a tenant, Mr. Lee does not have an interest in the loan or in the underlying Property. Accordingly, he does not have standing to question the validity of the non-judicial foreclosure.

Further, although Mr. Lee asserted in his response to Trustee's motion that he had an option from a third party to purchase the Property from that party, that also is not sufficient to give him standing. A contract conferring an option to purchase is an irrevocable and continuing offer to sell, and conveys

14

no interest in land to the optionee, but vests in him only a right in personam to buy at his election. *Warner Bros. Pictures v. Brodel*, 31 Cal.2d 755, 772 (1948). Finally, absent an interest in the Property, Mr. Lee does not have standing to ask the court to quiet title in the Property. *Chao Fu, Inc. v. Chen*, 206 Cal.App. 4th 48, 58-59 (2012).

In the end, Mr. Lee cannot show that he was personally injured. Instead, he was asserting the rights and claims of Indian Village which was not a party to the litigation. The general prohibition against allowing litigants to enforce rights of third parties exists for two reasons: First, courts should shy away from adjudicating rights unnecessarily, specifically because the purported holders of those rights may choose not to enforce them "or will be able to enjoy them regardless of whether the in-court litigant is successful or not." *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976). Second, permitting parties to assert the rights of third parties will frustrate the court's efforts to properly determine issues as "courts depend on effective advocacy" and "third parties themselves usually [are] the best proponents of their own rights." *Id.* There was thus good reason for the bankruptcy court to conclude that Mr. Lee lacked standing on this cause of action.

***Mr. Lee's Second Cause Of Action for Negligent Infliction of Emotional Distress***: Under California law, negligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation, and damages apply. *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal.

4th 124, 129 (1993). A right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff. *Burgess v. Super. Ct.*, 2 Cal. 4th 1065, 1072 (1991). With rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 985 (1992).

The "serious emotional distress" required for negligent infliction of emotional distress is functionally the same as the "severe emotional distress" required for intentional infliction of emotional distress. *Wong v. Tai Jing*, 189 Cal.App. 4th 1354, 1378 (2010). The California Supreme Court has set a "high bar" for what can constitute severe emotional distress. *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009). Severe emotional distress means emotional distress of such substantial or enduring quality that no reasonable person in civilized society should be expected to endure it. *Wong*, 189 Cal.App.4th at 1376.

The allegations in Mr. Lee's complaint under this cause of action are nothing more than bare assertions and legal conclusions without factual allegations to support them. Mr. Lee has not pled that any defendant in this action owes him a duty of any kind. In his opposition filings, Mr. Lee provides no further argument regarding any purported duty owed to him by the defendants. Even if there were such a duty, which he did not allege, Mr. Lee's complaint contained no allegations that he was at risk of physical harm.

Where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was "serious." *Wong*, 189 Cal.App.4th at 1376. Mr. Lee does not allege any facts that show the type of severe emotional distress required for negligent infliction of emotional distress, instead making the bare allegation that he has suffered "substantial emotional distress and anguish." This conclusory statement is insufficient to raise a right to relief above the speculative level.

Mr. Lee attached correspondence between Mr. Cooper and himself to his complaint. But none of this correspondence demonstrates emotional turmoil or the sort of outrageous conduct necessary for this kind of claim.

In the end, Mr. Lee failed to establish the necessary injury in fact for standing. Even if Mr. Lee had established the requirements for standing, construing the complaint in a manner most favorable to Mr. Lee, his bare assertions do not state a cause of action for negligent infliction of emotional distress. Accordingly, the bankruptcy court properly granted Trustee's motion for judgment on the pleadings on this cause of action.

*Mr. Lee's Third Cause Of Action For Intentional Infliction of Emotional Distress*: Under California law, the elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

17

emotional distress by the defendant's outrageous conduct. *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991).

The bankruptcy court properly noted that Mr. Lee's cause of action for intentional infliction of mental distress suffers from the same defect as his claim for negligent infliction of emotional distress. He did not plead any facts that may constitute "severe emotional distress." Moreover, neither Mr. Lee's correspondence with Mr. Cooper nor his response to Trustee's motion show any facts which demonstrate conduct so extreme as to exceed all bounds of that usually tolerated in a civilized community.

Both severe or extreme emotion distress and outrageous conduct are elements required for an intentional infliction of emotional distress claim. Both those elements are not met here.

***Leave to Amend***:  Although  Civil Rule 12(c) does not mention leave to amend, courts have the discretion in appropriate cases to grant a Civil Rule 12(c) motion with leave to amend. Here, the bankruptcy court gave Mr. Lee ample time and opportunity to dismiss his complaint without prejudice or to file a motion for leave to amend his complaint prior to entry of judgment for Trustee. He did neither. Accordingly, the bankruptcy court did not err in entering judgment in favor of Trustee.

**B.** **The bankruptcy court did not err by awarding Trustee attorneys' fees under Cal. Civ. Code § 5975.**

Cal. Civ. Code § 5975(c) provides:

In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorneys' fees and costs.

Cal. Civ. Code § 4150 defines what is a governing document:

Governing documents means the declaration and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association.

Whether attorneys' fees may be allowed under the statute is not dependent on a determination of the dispute concerning the governing documents but that it was put at issue in the action. For the attorneys' fees provision of Cal. Civ. Code § 5975 to apply, the court must find that a plaintiff's complaint asserts a claim to "enforce the governing documents." A "claim based on a right or remedy under the governing documents," is an action to enforce the governing documents. *Salawy v. Ocean Towers Hous. Corp.*, 121 Cal.App.4th 664, 670 (2004).

To determine whether an action is "an action to enforce the governing documents," courts look to the gravamen of the complaint. *Salehi v. Surfside III Condo. Owners' Ass'n*, 200 Cal.App.4th 1146, 1151 (2011); *see also Rancho Mirage Country Club Homeowners Ass'n v. Hazelbaker*, 2 Cal.App.5th 252,

19

259–260 (2016) (in determining whether an action is one "'to enforce the governing documents' in the meaning of section 5975," courts should focus on the "gravamen" of the complaint, the "nature of the dispute between the parties," and "the nature of the relief sought"); *Salawy*, 121 Cal.App.4th at 671 (an action is one to enforce the governing documents if "the essence of the claim falls within the enforcement of the governing documents"). The court is therefore required to do more than review the allegations of the operative pleading to see if it references duties under the CC & R's. Rather, it must ascertain the overall gist or "essence" of the action. *Farber*, 141 Cal.App.4th at 1012.

The question before us is how to apply the statutory language in Cal. Civ. Code § 5975 to a given factual and procedural context. Initially, we review the general allegations in Mr. Lee's complaint which were incorporated in each cause of action. These general allegations, as relevant to Plaintiff's contention that the bankruptcy estate's asserted interests in the Property are defective, include the following:

> A. (36) "Under California law, **an HOA can only collect assessments from its membership and thus compel their payment if certain acts are undertaken**, the most critical one being that the board of directors must meet and set the annual dues each year. If it fails to meet each year and set a new rate, the existing dues rate continues until changed." Complaint ¶ 36.

> B. (37) "The **2002 HOA, the 'Gold Strike Heights Association', never set any rate for annual dues. The 2007 HOA, the 'Gold**

Strike Heights Homeowners Association', has never set any rate for annual dues and lacks the right to do so. The governing documents filed by Frank Meager in 2002 did not set a rate for dues and no board of directors has ever done so." Complaint ¶ 37.

C. (39) "It appears that the non-judicial foreclosure is based entirely upon a failure of Indian Village to pay monthly assessments on 31 lots based upon a monthly rate of $84.00. However, such a rate was never set by the 2002 HOA nor the 2007 HOA. In fact, no rate of any kind has ever been set by either HOA." Complaint ¶ 39.

D. (40) "The 2002 HOA, the 'Gold Strike Heights Association', may have the right under the 2002 governing documents recorded with the County of Calaveras to set a monthly or annual rate for assessments but it never has. The 2007 HOA, the 'Gold Strike Heights Association', does not have the right to set such an assessment and has never tried to do so." Complaint ¶ 40.

E. (44) "However, because the 2007 HOA lacked any right to collect such assessments, the foreclosure process was begun in 2013 under the name of Defendant GOLD STRIKE 2002 which may have had such rights at one time but could not legally exercise them as a suspended corporation." Complaint ¶ 44.

F. (50) "All notices and documents recorded with the Calaveras County Recorder in the years 2013 and 2014 and served upon Indian Village in regard this assessment dispute and the subsequent illegal foreclosure action clearly indicated that the foreclosing entity was the 'Gold Strike Heights Association' (Defendant GOLD STRIKE 2002) formed in 2002. It was only when the illegal foreclosure was finally completed in early 2015

with recording of a trustee's deed that ownership of 145 Jasper Way was illegally transferred into the 2007 corporate entity, the 'Gold Strike Heights Homeowners Association'." Complaint ¶ 50.

G. (51) "At all times when this foreclosure was carried out, the senior deeds of trust in existence on each of 31 lots, far exceeded the value of each lot by large margins. **Thus, there was no valid reason to take the foreclosure action initiated by the Defendant GOLD STRIKE 2007 except to strip Indian Village of its property and voting rights and thus pave the way for the Defendant to dissolve the HOA** and thus attempt to avoid all liability for their years of misconduct." Complaint ¶ 51.

H. (59) "On October 31, 2014, Plaintiff LEE sent a letter to Mike Cooper in which LEE challenged the claim that the new owner of the property located at 145 Jasper Way was the 'Gold Strike Heights Homeowners Association' (Defendant GOLD STRIKE 2007). **LEE told Cooper that the 'Gold Strike Heights Association' and the 'Gold Strike Heights Homeowners Association' were not the same entity and in fact were distinct and separate corporate entities and thus not interchangeable** as was contended by Mike Cooper. Attached as Exhibit 'O' to this complaint is a true and correct copy of this letter." Complaint ¶ 59.

I. (73) "When 'Gold Strike Heights Homeowners Association' (Defendant GOLD STRIKE 2007) contracted with 'Community Assessment Recovery Services' to start **the non-judicial foreclosure process against Indian Village on the basis that Indian Village owed thousand of dollars in delinquent assessments, there was no possibility whatsoever of collecting any money from such a foreclosure proceeding as the senior liens on each of the properties far exceed the market value of**

22

**any of the 31 lots.**" Complaint ¶ 73.

J. (74) "Thus, **the non-judicial foreclosure action orchestrated by 'Gold Strike Heights Homeowners Association' (Defendant GOLD STRIKE 2007) was for purposes other than collecting any delinquent dues.**" Complaint ¶ 74.

K. (75) "As this non-judicial foreclosure applied to Indian Village Estates, **the actual purpose was to take way ownership of all the land owned by Indian Village Estates and thus take away any opposition by Indian Village to plans to dissolve** Defendant GOLD STRIKE 2007." Complaint ¶ 75.

L. (86) "Defendants **GOLD STRIKE 2002 and GOLD STRIKE 2007 never had the legal authority to foreclose, i.e., the authority to exercise the power of sale under California law to collect the alleged delinquent assessments,** resulting in the non-judicial foreclosure sale being void ab initio." Complaint ¶ 86.

M. (88) **"None of the Defendants were ever a beneficiary or assignee of any beneficiary of any delinquent assessments** recorded against the subject property. Accordingly, they wrongfully caused the recording or the Notice of Default, Notice of Trustee's Sale, and any Trustee's Deed Upon Sale against the subject property." Complaint ¶ 88.

N. (99) **"Defendants GOLD STRIKE 2002 and GOLD STRIKE 2007 never had the legal authority to** foreclose, i.e., the authority to exercise the power of sale under California law **to collect the alleged delinquent assessments**, resulting in the non-judicial foreclosure sale being void ab initio." Complaint ¶ 99.

O. (101) **"None of the Defendants were ever a beneficiary** or

assignee of any beneficiary **of any delinquent assessments** recorded against the subject property. Accordingly, they wrongfully caused the recording of the Notice of Default, Notice of Trustee's Sale, and any Trustee's Deed Upon Sale against the subject property." Complaint ¶ 101.

P. Prayer for Relief Paragraph 1: "For a declaration that the 2002 and the 2007 Gold Strike corporation are now and **have always been separate and distinctive corporate entities** and that have not been merged either by official action or by operation of law,. . . ."

The bankruptcy court correctly found that these allegations put at issue the rights arising from the Governing Documents: (1) Gold Strike 2007 could not make assessments (which are rights arising under the Governing Documents); (2) No assessments were ever set by either Gold Strike 2002 or Gold Strike 2007 (which are issues arising under the Governing Documents); (3) Gold Strike 2007 does not have the right to set assessments (which are rights arising under the Governing Documents); (4) The non-judicial foreclosure is based on assessments that were not set by Gold Strike 2002 or Gold Strike 2007 (which are rights arising under the Governing Documents); (5) The notices and documents relate to disputed assessments and subsequent illegal foreclosure based on such disputed assessments (which are rights arising under the Governing Documents); (6) There was no valid reason for Gold Strike 2007 to conduct the non-judicial foreclosure actions (which are rights relating to the assessments which are asserted by Plaintiff not to be

24

proper under the Governing Documents); (7) The non-judicial foreclosure actions were taken to dissolve the homeowners association (which relates to the rights and powers of the homeowners association and relationship to the member arising under the Governing Documents); (8) Gold Strike 2002 and Gold Strike 2007 were separate entities (and Gold Strike 2007 is not permitted to exercise the powers under the Governing Documents); (9) The non-judicial foreclosure sale was based on asserted unpaid assessments (which Plaintiff asserts were not properly made under the Governing Documents); (10) The non-judicial foreclosure sales were conducted by Gold Strike 2007 for purposes of then collecting delinquent dues (which are rights and powers arising under the Governing Documents); (11) The purpose of the non-judicial foreclosure was to take ownership of the land away from Indian Village , to remove opposition (to the conduct of Gold Strike 2007 management under the Governing Documents), and dissolve the homeowners association; (12) The action of Gold Strike 2007 was not for the purposes of collecting delinquent assessments (which are rights and powers arising under the Governing Documents); (13) Gold Strike 2002 and Gold Strike 2007 never had the legal authority to foreclose (which are rights and powers arising under the Governing Documents); (14) Gold Strike 2002 and Gold Strike 2007 were not beneficiaries of any delinquent assessment (which are rights arising under the Governing Documents); (15) Gold Strike 2002 and Gold Strike 2007 did not have authority under California law to collect the alleged delinquent

assessments (which are rights and powers arising under the Governing Documents); and (16) Plaintiff requests that the court determine that Gold Strike 2002 and Gold Strike 2007 were and are separate legal entities (and thereby Gold Strike 2007 cannot exercise and enforce the rights and powers under the Governing Documents).

The bankruptcy court's findings support the conclusion that Mr. Lee's complaint was an action to enforce the Governing Documents. Contrary to Mr. Lee's contentions on appeal, the essence of the allegations in the complaint is that Gold Strike 2002 and 2007 participated in the foreclosure process in violation of the Governing Documents and that their enforcement of the foreclosure provisions of the Governing Documents were otherwise invalid.

Mr. Lee argues that the gravamen of his complaint was to resolve landlord/tenant issues. He further asserts that he was not seeking to enforce the Governing Documents but mentioned them only to provide a context for his concerns over who was the proper owner of his Property. The fact that Mr. Lee did not expressly allege a violation of the Governing Documents or claim that he was seeking to enforce the Governing Documents in any of his causes of action does not change the nature of the claim asserted. Regardless of how he titled his causes his action, the gravamen or gist of his complaint was to enforce the Governing Documents with respect to the non-judicial foreclosure. *See Rancho Mirage Country Club Homeowners Assn.*, 2 Cal.App.5th

at 259–260 (even though the complaint "was framed as an action to enforce [a settlement] agreement," the "gravamen" of the complaint was to enforce the Governing Documents because the plaintiff claimed the defendants did not take steps to bring the property into compliance with the CC & Rs); *see also Cutujian v. Benedict Hills Estates Assn.*, 41 Cal.App.4th 1379, 1389 (1996) (for statute of limitations purposes, even though the plaintiff labeled his cause of action "nuisance," the association's violation of its duty to the plaintiff under the CC & Rs "gave rise to liability for the nuisance").

Mr. Lee also contends that Trustee is judicially estopped from arguing that the complaint was an action to enforce the Governing Documents because the bankruptcy court entered judgment for Trustee on his motion for judgment on the pleadings based on Mr. Lee's lack of standing. For judicial estoppel to apply:

> Several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001) (citations omitted).

*see also Power Agent, Inc. v. Electronic Data Sys. Corp.*, 358 F.3d 1187, 1192 (9th Ci5r. 2004) (defining judicial estoppel as "[t]he principle that a litigant may not benefit by making directly contradictory arguments regarding the same dispute in different tribunals.").

The doctrine of judicial estoppel is not applicable under these circumstances. Trustee's motion for a judgment on the pleadings under Civil Rule 12(c) based on lack of standing is a distinct dispute from one seeking attorneys' fees under Cal. Civ. Code § 5975. Furthermore, even if an action is dismissed for lack of standing, Cal. Civ. Code § 5975 (c) still applies such that the prevailing party is entitled to reasonable attorneys' fees. *Farber v. Bay View Terrace Homeowners Ass'n*, 141 Cal. App. 4th 1007, 1014 (2006) ("The mandatory attorney's fees and costs award under section [5975], applies when a plaintiff brings an action to enforce such governing documents, but is unsuccessful because he or she does not have standing to do so.") .

Finally, Mr. Lee argues that the bankruptcy court improperly considered factors outside the complaint that "convinced" the court that he was attempting to attack the foreclosure and enforce the Governing Documents. Specifically, the court noted Mr. Lee's active participation in other aspects of the bankruptcy case. Mr. Lee contends that this was error because "the complaint at issue says what it says and this appeal can be properly decided within the four corners of the complaint and the attached exhibits."

28

Mr. Lee's argument is without merit. The bankruptcy court throughly examined Mr. Lee's complaint and looked at the substance of the claims asserted and relief sought in determining whether his action was one to enforce the Governing Documents within the meaning of Cal. Civ. Code § 5975. Upon our own review, the detailed allegations of the complaint show that Mr. Lee was seeking to enforce the Governing Documents in order to prove that neither Gold Strike 2002 or Gold Strike 2007 had the authority to foreclose under those documents. In any event, to the extent that the court relied on Mr. Lee's extracurricular activities for its decision, it was harmless error that we ignore. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012), *aff'd*, 604 Fed.Appx. 552 (9th Cir. 2015).

Because Mr. Lee makes no arguments regarding the reasonableness of Trustee's fees, those arguments are waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

In sum, we conclude that the bankruptcy court properly awarded Trustee prevailing party attorneys' fees under Cal. Civ. Code § 5975.

### CONCLUSION

For the reasons discussed above, we AFFIRM both orders on appeal.